IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,422

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER OBREGON,
*Appellant.*

SYLLABUS BY THE COURT

1.

The classification of prior offenses for criminal history purposes involves interpretation of the revised Kansas Sentencing Guidelines Act, K.S.A. 2018 Supp. 21-6801 et seq. Statutory interpretation is a question of law subject to unlimited review.

2.

The revised Kansas Sentencing Guidelines Act uses prior out-of-state convictions when calculating a person's criminal history. Under the Act, Kansas classifies an out-of-state conviction as a person or nonperson offense by referring to comparable offenses under the Kansas criminal code. If the Kansas criminal code does not have a comparable offense, the out-of-state conviction is classified as a nonperson crime.

3.

A prior out-of-state conviction must have elements identical to or narrower than a Kansas person crime to be scored as a person crime.

1

**4.**

The State has the burden at sentencing to prove an offender's criminal history by a preponderance of the evidence. The district court's finding that the State met that burden must be supported by substantial competent evidence.

**5.**

Under K.S.A. 2018 Supp. 21-6805(g)(1), if the trier of fact makes a finding that an offender possessed a firearm in furtherance of a drug felony, that offender must be sentenced to an additional six months' imprisonment.

**6.**

As a general rule, special questions may not be submitted to a jury for answer in a criminal prosecution.

Review of the judgment of the Court of Appeals in an unpublished opinion filed February 16, 2018. Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed June 28, 2019. Judgment of the Court of Appeals affirming in part, vacating in part, and remanding to the district court is affirmed in part and reversed in part. Judgment of the district court is reversed, sentences vacated, and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jason B. Oxford*, assistant county attorney, argued the cause, and *Krista Blaisdell*, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Christopher Obregon appeals his sentence after pleading no contest to drug offenses. He challenges whether a prior Florida battery conviction should be

classified as a person felony. Obregon also disagrees with the Court of Appeals decision to remand his case for a jury trial on whether a firearm sentence enhancement is appropriate. We affirm in part, reverse in part, vacate sentences, and remand to the district court with directions.

We vacate Obregon's sentence and order the district court to reconsider the Florida conviction's person-crime classification. This is necessary because there were two alternative means of committing the Florida offense, and it is unclear which provided the basis for conviction. This may be significant because one version of the Florida offense lacks a comparable Kansas person offense, so it would not support the person-crime classification the district court gave it. See *State v. Wetrich*, 307 Kan. 552, Syl. ¶ 3, 412 P.3d 984 (2018). We also order that Obregon's resentencing proceed without the firearm enhancement. The panel's remand for a jury finding is contrary to our state's general rule against special verdicts in criminal cases.

FACTUAL AND PROCEDURAL BACKGROUND

Obregon pleaded no contest to one count each of marijuana possession with intent to distribute and cocaine possession with intent to distribute. These offenses occurred in May 2016. In exchange, the State dismissed 18 other drug charges.

Under K.S.A. 2018 Supp. 21-6805(g)(1), "if the trier of fact makes a finding that an offender . . . in the furtherance of a drug felony, possessed a firearm, . . . the offender shall be sentenced to: (A) . . . an additional 6 months' imprisonment." In its complaint, the State alleged both counts Obregon pleaded to carry the statutory enhancement. The plea agreement provided for the enhancement. The district court accepted Obregon's no contest pleas, found him guilty of both offenses, and applied the enhancement.

3

Obregon's presentence investigation report recommended a B criminal history score. It listed four prior convictions, including a 2012 Florida battery conviction, which the PSI report recommended be scored as a person felony. Obregon would have had a criminal history score of C if the Florida battery was scored as a nonperson felony. See K.S.A. 2018 Supp. 21-6809 (criminal history categories in scale).

Florida's battery statute contains two ways to commit the offense. One is identical to a Kansas battery, but the other is broader. See Fla. Stat. § 784.03(1)(a) (2009). The PSI report did not show which version in the Florida statute Obregon was convicted of violating. He did not object to his criminal history at sentencing.

The district court denied a downward dispositional departure motion and sentenced Obregon to 79 months' imprisonment for cocaine possession and to a concurrent 55-months' prison term for the marijuana possession. Obregon timely appealed.

A Court of Appeals panel concluded the district court properly calculated Obregon's criminal history score. *State v. Obregon*, No. 117,422, 2018 WL 911215, at *3 (Kan. App. 2018) (unpublished opinion). But it also held Obregon invalidly waived his right to jury trial on the firearm enhancement. 2018 WL 911215, at *3. The panel vacated the enhancement and remanded to the district court either for Obregon to properly waive his jury trial right or for a jury to make the factual findings required by K.S.A. 2015 Supp. 21-6805(g)(1) regarding the firearm. 2018 WL 911215, at *3.

Obregon timely petitioned for review of the panel's decision, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

4

## THE FLORIDA BATTERY CONVICTION

To be scored as a person crime, a prior out-of-state conviction must have elements identical to or narrower than a Kansas person crime. *Wetrich*, 307 Kan. at 562. Obregon challenges whether the district court properly scored his Florida conviction as a person crime without knowing which version of the Florida crime he committed.

*Standard of review*

Classification of prior offenses for criminal history purposes involves statutory interpretation, which is a question of law subject to unlimited review. *Wetrich*, 307 Kan. at 555 (applying unlimited review standard to whether prior out-of-state conviction should be classified as person felony).

*Discussion*

Under the revised Kansas Sentencing Guidelines Act:

"(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

"(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction:

. . . .

"(3) The state of Kansas shall classify the crime as person or nonperson. *In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be*

5

*referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state conviction shall be classified as a nonperson crime.*" (Emphasis added.) K.S.A. 2015 Supp. 21-6811(e).

At the time Obregon's sentence was pronounced, our caselaw construed K.S.A. 2015 Supp. 21-6811(e) (formerly K.S.A. 21-4711[e]) to mean "[f]or purposes of determining criminal history, the offenses need only be comparable, not identical." *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 (2003). "[T]he comparable offense" was "the closest approximation to" the out-of-state crime. 276 Kan. at 179. But Obregon seeks the benefit of *Wetrich*, which announced a different interpretation on March 9, 2018—more than a year after Obregon was sentenced, and a month after the Court of Appeals decision rejecting his criminal-history-score challenge. See *Obregon*, 2018 WL 911215, at *1 (opinion filed February 16, 2018).

Our recent caselaw supports Obregon. In *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 (2019) (*Murdock II*), we held that "a party may seek and obtain the benefit of a change in the law during the pendency of a direct appeal, but a party moving to correct an illegal sentence is stuck with the law in effect at the time the sentence was pronounced." See also *State v. Newton*, 309 Kan. __, 2019 WL 2399484, at *3 (No. 116,098, filed June 7, 2019) (holding defendant sentenced before *Wetrich* could not rely on *Wetrich* in motion to correct an illegal sentence); *State v. Keel*, 302 Kan. 560, 562, 357 P.3d 251 (2015) (reaching merits of defendant's sentencing challenge relying on *State v. Murdock*, 299 Kan. 312, 319, 323 P.3d 846 [2014] [*Murdock I*], when defendant "filed a motion with [the Supreme] [C]ourt to correct an illegal sentence" after review was granted in his direct appeal). Accordingly, we apply *Wetrich* to Obregon's sentencing appeal.

6

The *Wetrich* court held:

"For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. *In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced.*" (Emphasis added.) 307 Kan. at 562.

If any element in the out-of-state crime is broader than any element comprising the Kansas crime to which it is being compared, the crimes are not comparable and the out-of-state crime must be classified as a nonperson offense. 307 Kan. 552, Syl. ¶ 3. In *Wetrich*, the court noted a Missouri burglary statute defined the structure involved to include "non-dwelling places," so this made the Missouri statute broader than the Kansas burglary-of-a-dwelling statute, which specified the structure must be a dwelling. 307 Kan. at 563-64. Also, the Missouri statute required a specific intent to "commit any crime," which was broader than the Kansas statute's "intent to commit a felony, theft, or sexual battery therein." 307 Kan. at 563.

In *State v. Buell*, 307 Kan. 604, 608, 412 P.3d 1004 (2018), the Kansas burglary-of-a-dwelling offense was determined not to be comparable to a Florida burglary because it could be committed "'*with the intent to commit an offense therein*,'" as opposed to Kansas' required "'intent to commit a felony, theft or sexual battery therein.'" Similarly in *State v. Moore*, 307 Kan. 599, 603, 412 P.3d 965 (2018), the court held the mental state element for Oregon burglary, i.e., "'*intent to commit a crime*'" in a dwelling, was fatally broader than the Kansas element.

In Florida, "[t]he offense of battery occurs when a person:  1. Actually and intentionally touches or strikes another person against the will of the other; *or* 2. Intentionally causes bodily harm to another person." (Emphasis added.) Fla. Stat. § 784.03(1)(a). The crime is a felony when it is committed by "[a] person who has one prior conviction for battery, aggravated battery, or felony battery . . . ." Fla. Stat. § 784.03(2). But a different offense called "Felony battery" occurs when a person "(a) Actually and intentionally touches or strikes another person against the will of the other; and (b) Causes great bodily harm, permanent disability, or permanent disfigurement." Fla. Stat. § 784.041 (2007).

In Kansas, "[b]attery is:  (1) Knowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2018 Supp. 21-5413(a). It is a person crime. K.S.A. 2018 Supp. 21-5413(g).

The State has not filed any pleading or brief since its Court of Appeals brief, which predated *Wetrich*, so it does not argue how the *Wetrich* rule applies to scoring Obregon's actual Florida offense.

Although there are two Florida offenses to consider, they are virtually identical as to mental state with both being narrower than the mental state required for the Kansas crime, so that aspect does not undermine the comparison. A Kansas battery is committed by "knowingly" or "recklessly" performing the prohibited act, but the Florida offense requires the offender act intentionally.

The problem presented comes in reviewing the prohibited conduct, which does not perfectly align between Florida and Kansas. As Obregon acknowledges, a Florida battery committed by causing bodily harm, either under Fla. Stat. § 784.03(1)(a) or Fla. Stat.

8

§ 784.041 is narrower than the K.S.A. 2015 Supp. 21-5413(a)(1) crime. But he counters that a touching "against the will of the other" is broader than the K.S.A. 2015 Supp. 21-5413(a)(2) crime because that conduct would not necessarily amount to a touching "done in a rude, insulting or angry manner."

In Florida, whether a touching amounts to battery turns on the victim's will. "[I]t is clear from Section 784.03 that any intentional touching of another person against such person's will is technically a criminal battery." *D.C. v. State*, 436 So. 2d 203, 206 (Fla. Dist. Ct. App. 1983). But in Kansas, whether a touching amounts to battery turns on the manner in which it is done. See K.S.A. 2018 Supp. 21-5413(a)(2). As Obregon argues, a touching done against a person's will is not necessarily a touching done in a "rude, insulting or angry manner." See *Williams v. Weber*, 905 F. Supp. 1502, 1510 (D. Kan. 1995) (ruling genuine issue of material fact precluded summary judgment on whether officer had probable cause to arrest plaintiff for battery based on plaintiff allegedly striking officer's hand when retrieving wallet from officer, when plaintiff testified he was "not rude, insulting or angry" in doing so).

Obregon's circumstances present a variation to the *Wetrich* analysis because we must consider what happens when the Kansas and out-of-state offenses are both what Kansas law refers to as alternative means crimes, i.e., offenses with multiple distinct sets of elements. See *State v. Brown*, 295 Kan. 181, 194, 284 P.3d 977 (2012). But see *Moore*, 307 Kan. at 603 ("Many alternative means may have supported the Oregon mental state element—e.g., intent to engage in disorderly conduct—that would not have been any kind of burglary in Kansas."); cf. *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243, 2249, 195 L. Ed. 2d 604 (2016) ("'[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes.'"). Obregon contends the district court must determine which Florida battery offense he committed and score the offense as a nonperson felony if the State cannot

demonstrate he intentionally caused bodily harm to another person, or if it turns out the offense occurred under the unwanted touching provision. We agree.

In an analogous situation, the United States Supreme Court has "recognized a 'narrow range of cases' in which sentencing courts . . . may look beyond the statutory elements . . . ." *Descamps v. United States*, 570 U.S. 254, 261, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). When a "statute is 'divisible'—*i.e.*, comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction" arose under any particular alternative. 570 U.S. at 262. In those cases, the Court's caselaw permits "sentencing courts . . . to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." 570 U.S. at 262; see also *Johnson v. United States*, 559 U.S. 133, 144, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) ("When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes . . . , the '"modified categorical approach"' . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.").

*Wetrich* implicitly recognizes the comparability analysis may focus on one of various alternative means of committing an offense. The *Wetrich* court compared the out-of-state offense to a particular subsection of the prior Kansas burglary statute, K.S.A. 21-3715(a), which made burglaries of dwellings person crimes. *Wetrich*, 307 Kan. at 563. Similarly, *Moore* also implicitly recognized this because it could have resolved the comparison between the earlier Kansas burglary statute, K.S.A. 21-3715, and an Oregon burglary statute on the grounds that the Oregon statute criminalized entering or remaining in a dwelling, a structure, or a conveyance with the requisite criminal intent—not just a

10

dwelling. Instead, *Moore* focused on whether the criminal intent for an Oregon dwelling burglary—"'*intent to commit a crime therein*'"—was broader than the criminal intent required for Kansas' dwelling burglary, i.e., "intent to commit a felony, theft or sexual battery therein." 307 Kan. at 603. In other words, if comparison based on the specific, alternative means of the Kansas and out-of-state statutes at issue was not permitted, the more particularized analyses in these cases would not have been necessary.

We should also clarify how this alternative means problem fits within our standard of review for these person-crime classification cases. Typically we describe the classification issue as a question of law, but it is a bit more nuanced because it is the State's burden to prove by a preponderance of the evidence that the defendant committed a crime for which classification is appropriate. See K.S.A. 2018 Supp. 21-6814; *State v. Hughes*, 290 Kan. 159, 162, 224 P.3d 1149 (2010). And when the crime in question is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification.

On appeal, the district court's finding that the State met its crime classification burden must be supported by substantial competent evidence to withstand scrutiny. 290 Kan. at 162. The presentence investigation summary frequently can satisfy the State's burden absent defendant's objection, but more is required when the summary does not indicate which version of the out-of-state offense the defendant committed. See K.S.A. 2018 Supp. 21-6814(b), (c). And failing additional proof, the person-crime classification is erroneous as a matter of law. See *Wetrich*, 307 Kan. at 562 (elements of out-of-state offense must be identical to, or narrower than, elements of Kansas comparator).

Applying this clarified standard of review, we hold the district court erred in classifying Obregon's Florida battery conviction as a person crime. The PSI report is the

11

only item in the record establishing the conviction as part of his criminal history, and it does not indicate what version of the offense he committed. This means on this record there is not substantial competent evidence to support the district court finding that Obregon committed a Florida offense with a comparable Kansas person crime. And because the Florida offense on its face is broader than the Kansas comparator, it should not have been classified as a person offense under *Wetrich* without supporting evidence.

Remand is necessary so the district court can determine the appropriate classification. At resentencing, the State will have the burden to prove Obregon's criminal history by a preponderance of the evidence. See K.S.A. 2018 Supp. 21-6814; *Hughes*, 290 Kan. at 162.

THE FIREARM ENHANCEMENT

In Kansas, a drug felony carries a six-month sentence enhancement if the trier of fact finds the defendant carried a firearm to commit a crime or possessed a firearm in furtherance of it. K.S.A. 2018 Supp. 21-6805(g)(1). In Obregon's case, he pleaded no contest to the base drug offenses, but not to any facts upon which the enhancement could be grounded. On review, he questions whether the panel erred by remanding his case for a jury to determine if the firearm enhancement should apply. We agree this was error.

Under the KSGA:

"(g)(1) Except as provided further, if the trier of fact makes a finding that an offender carried a firearm to commit a drug felony, or in furtherance of a drug felony, possessed a firearm, in addition to the sentence imposed pursuant to K.S.A. 21-6801 through 21-6824, and amendments thereto, the offender shall be sentenced to:

12

(A) Except as provided in subsection (g)(1)(B), an additional 6 months' imprisonment; and

(B) if the trier of fact makes a finding that the firearm was discharged, an additional 18 months' imprisonment.

"(2) The sentence imposed pursuant to subsection (g)(1) shall be presumptive imprisonment. Such sentence shall not be considered a departure and shall not be subject to appeal." K.S.A. 2018 Supp. 21-6805(g)(1) and (2).

The panel held the enhancement violated Obregon's right under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because he did not validly waive his jury trial right. *Obregon*, 2018 WL 911215, at *3. The State did not cross-petition for review of that holding so the question is settled for this case. See *State v. Gonzalez*, 307 Kan. 575, 590, 412 P.3d 968 (2018) (an issue is settled when the State failed to cross-petition for review of Court of Appeals' determination that defendant's constitutional and statutory rights to be present were violated).

Obregon argues a jury trial is not appropriate because the statute does not provide for a procedure by which a trier of fact can make an *Apprendi*-compliant finding in a case with the same procedural posture as his. He cites *State v. Kessler*, 276 Kan. 202, 217, 73 P.3d 761 (2003), for the proposition that "a district court cannot fashion its own *Apprendi*-compliant mechanism," but *Kessler* is distinguishable because the statutory mechanism for imposing an upward durational departure sentence was declared unconstitutional. That has not happened here. The enhancement statute simply contemplates the firearm question be submitted to the trier of fact, which in the Court of Appeals' view was not properly done.

13

Obregon points out the panel's mandate conflicts with remedies ordered by other panels that concluded firearm enhancements were imposed in violation of *Apprendi*, referring to *State v. Jernigan*, No. 116,410, 2018 WL 1123926, at *4 (Kan. App. 2018) (unpublished opinion), and *State v. Morales*, No. 114,223, 2016 WL 4070748, at *4 (Kan. App. 2016) (unpublished opinion). In both cases, the panels vacated the defendants' sentences and remanded for resentencing without the enhancement. See also *State v. Housworth*, No. 115,836, 2017 WL 2834502, at *7, 16 (Kan. App. 2016) (unpublished opinion) (vacating sentence because enhancement was "illegal," since jury did not make the finding, and remanding for resentencing). Similarly, we note in *State v. Allen*, 283 Kan. 372, 379, 153 P.3d 488 (2007), the court simply vacated the sentence and remanded for resentencing after holding defendant's *Apprendi* rights were violated by a sentence that was calculated using a "persistent sex offender" enhancement, which in turn was based on the trial court's finding that a prior conviction was "sexually motivated." And in *State v. Bello*, 289 Kan. 191, 199-200, 211 P.3d 139 (2009), the court vacated an off-grid sentence imposed under Jessica's Law when the offender's age was found by the judge rather than the jury. In doing so, the court specifically "remanded for resentencing the convictions as on-grid felonies . . . ." 289 Kan. at 200. But these decisions do not address whether remand for a jury finding would have been permissible for the enhancement, so they are of little analytical value.

Nevertheless, these cases are consistent with Kansas caselaw generally prohibiting special jury verdicts in criminal cases. See *State v. Brown*, 298 Kan. 1040, 1047, 318 P.3d 1005 (2014) ("A special verdict 'is one where the jury does not render a general verdict of guilty or not guilty, but simply finds certain facts and leaves the rest to the court.'"). "[I]n criminal cases, '"it has always been the function of the jury to apply the law, as given by the court in its charge, to the facts."'" 298 Kan. at 1046. "'In general the only proper verdicts to be submitted in a criminal prosecution are "guilty" or "not guilty" of the charges.'" 298 Kan. at 1046 (quoting *State v. Osburn*, 211 Kan. 248, 255-56, 505

14

P.2d 742 [1973]). In *Brown*, the court applied this rule to hold a district court erred by submitting to the jury the question whether the defendant was over 18 at the time of his crimes as "special questions on the verdict forms rather than in guilty verdicts that were informed by instructions that included the defendant's age as an enumerated element." 298 Kan. at 1046. The court noted the Legislature had "established procedures whereby sentence-enhancing fact(s), *i.e.*, elements of a greater offense, may be determined by a jury after it has already reached an initial verdict of guilty on the lesser degree of the offense." 298 Kan. at 1047. The court cited K.S.A. 2013 Supp. 21-6817(b)(2), which permits a trial court to determine whether evidence of aggravating factors for departure purposes should be submitted to the jury in a separate departure sentencing hearing after the verdict. In the *Brown* court's view, "[s]uch serial factfinding is similar to that effected through the verdict forms special questions in this case." 298 Kan. at 1047-48.

In Obregon's case, the district court already entered its judgment of conviction. A general guilty or not guilty verdict would not be possible on remand. And, as Obregon points out, the Legislature has not created a statutory exception to the general rule against special verdicts for a firearm enhancement to be determined separately after the verdict. This appeal concerns only his sentences, and, more pointedly, whether he used a firearm to commit his drug possession offenses.

The sentences are vacated and the case is remanded for resentencing in a manner consistent with this opinion, without the enhancement.

\* \* \*

JOHNSON, J., concurring in part and dissenting in part: Addressing the issues in reverse order, I agree with the majority's result on the firearms enhancement, i.e., the district court must resentence Obregon without the enhancement. With respect to the

15

criminal history issue, I agree that the State failed to present sufficient evidence to support the classification of the Florida battery conviction as a person felony. That insufficiency of evidence should result in our vacating the sentence and remanding for resentencing with a criminal history score of C, which the majority identifies as the proper score when the Florida conviction is classified as nonperson.