NOT DESIGNATED FOR PUBLICATION

No. 120,349

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

N-DESHA SKYE FIELDER,
*Appellant.*


MEMORANDUM OPINION

Appeal from Harper District Court; WILLIAM R. MOTT, judge. Opinion filed November 27, 2019. Sentence vacated and case remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and POWELL, JJ.

PER CURIAM: N-Desha Skye Fielder appeals his sentence following his convictions of one count of burglary of a nondwelling and one count of burglary of a vehicle. Fielder claims the district court erred in calculating his criminal history score by classifying his prior Oklahoma stalking convictions as person misdemeanors and then converting three of the person misdemeanors into one person felony conviction. We agree with Fielder's claim so we vacate his sentence and remand for resentencing.

1

On July 2, 2018, Fielder pled guilty to one count of burglary of a nondwelling and one count of burglary of a vehicle. The presentence investigation (PSI) report reflected four Oklahoma stalking convictions, classified as person misdemeanors; one Oklahoma second-degree burglary conviction, classified as a nonperson felony; one Oklahoma taking or receiving a stolen credit or debit card conviction, classified as a nonperson misdemeanor; one Oklahoma assault and battery conviction, classified as a person misdemeanor; one Kansas burglary of a motor vehicle conviction, classified as a nonperson felony; and one Kansas theft conviction, classified as a nonperson misdemeanor. The PSI report converted three of the Oklahoma misdemeanor stalking convictions into a person felony, resulting in Fielder having a criminal history score of C.

Fielder did not object to his criminal history score at the sentencing hearing on August 6, 2018. With a criminal history score of C, the presumptive sentencing range for Fielder's primary crime of conviction, burglary of a nondwelling, was 25-27-29 months' imprisonment. After hearing argument, the district court sentenced Fielder to 27 months' imprisonment for burglary of a nondwelling and 6 months' imprisonment for burglary of a vehicle, to be served consecutive to each other and consecutive to the sentence in an Oklahoma case. Fielder timely appealed.

ANALYSIS

Fielder's sole claim on appeal is that the district court erred in calculating his criminal history score by classifying his Oklahoma stalking convictions as person misdemeanors and then converting three of the person misdemeanors into one person felony conviction. The State argues that the district court properly scored Fielder's prior stalking convictions from Oklahoma as one person felony. Fielder can raise this issue for the first time on appeal because, assuming the appellate court otherwise has jurisdiction,

2

an incorrect criminal history score results in an illegal sentence, which the court may correct at any time. See K.S.A. 2018 Supp. 22-3504(1); *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Classifying prior convictions for criminal history purposes requires statutory interpretation, which is a question of law over which this court has unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Under the Kansas Sentencing Guidelines Act:

"(1) Out-of-state convictions and juvenile adjudications shall be used in classifying the offender's criminal history.

"(2) An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction.

. . . .

"(3) The state of Kansas shall classify the crime as person or nonperson. In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to. If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2018 Supp. 21-6811(e).

Fielder committed his current crimes of conviction on September 5, 2017. Thus, to classify his prior Oklahoma convictions as person or nonperson, the district court had to determine whether in September 2017 Kansas had an offense comparable to the Oklahoma crime of misdemeanor stalking. By the time the district court sentenced Fielder on August 6, 2018, our Supreme Court had instructed that for a Kansas crime to be a "comparable offense" in this context, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *Wetrich*, 307 Kan. at 562.

Fielder argues that the relevant elements of the Oklahoma stalking statute are broader than the elements of the Kansas stalking statute. Thus, he contends that under

3

*Wetrich*, there is no Kansas offense comparable to the Oklahoma offense of stalking, and the district court should have classified his Oklahoma misdemeanor stalking convictions as nonperson crimes. If the district court had done so, the Oklahoma stalking convictions would not have been eligible for conversion into a person felony under K.S.A. 2018 Supp. 21-6811(a). Without the converted person felony, Fielder's criminal history would have included no prior person felonies, rendering his criminal history score F instead of C. See K.S.A. 2018 Supp. 21-6804. With a criminal history score of F, Fielder's presumptive sentence for burglary of a nondwelling would be 17-18-19 months' imprisonment. See K.S.A. 2018 Supp. 21-6804.

The State agrees that *Wetrich* is the applicable test for comparable offenses. But the State contends that the Oklahoma stalking statute is narrower than the Kansas stalking statute, so they are comparable offenses. Before engaging in a comparison of the two statutes, we must resolve a threshold disagreement between the parties: whether this court should remand to the district court to determine which section of the Oklahoma statute governed Fielder's convictions. The Oklahoma stalking statute in effect when Fielder was convicted in Oklahoma states:

> "A. Any person who willfully, maliciously, and repeatedly follows or harasses another person in a manner that:
> 1. Would cause a reasonable person or a member of the immediate family of that person as defined in subsection F of this section to feel frightened, intimidated, threatened, harassed, or molested; and
> 2. Actually causes the person being followed or harassed to feel terrorized, frightened, intimidated, threatened, harassed, or molested, upon conviction, shall be guilty of the crime of stalking, which is a misdemeanor punishable by imprisonment in a county jail for not more than one (1) year or by a fine of not more than One Thousand Dollars ($1,000.00), or by both such fine and imprisonment.
> "B. Any person who violates the provisions of subsection A of this section when:
> 1. There is a permanent or temporary restraining order, a protective order, an emergency ex parte protective order, or an injunction in effect prohibiting the behavior

4

described in subsection A of this section against the same party, when the person violating the provisions of subsection A of this section has actual notice of the issuance of such order or injunction; or

      2. Said person is on probation or parole, a condition of which prohibits the behavior described in subsection A of this section against the same party or under the conditions of a community or alternative punishment; or

      3. Said person, within ten (10) years preceding the violation of subsection A of this section, completed the execution of sentence for a conviction of a crime involving the use or threat of violence against the same party, or against any member of the immediate family of such party, upon conviction, shall be guilty of a felony punishable by imprisonment in the State Penitentiary for a term not exceeding five (5) years or by a fine of not more than Two Thousand Five Hundred Dollars ($2,500.00), or by both such fine and imprisonment." Okla. Stat. tit. 21, § 1173 (2015).

As the State points out, subsections A and B both describe ways an individual can commit stalking in Oklahoma and Fielder's PSI report does not identify the subsection under which Fielder was convicted. Thus, the State asserts that "it remains unclear whether Fielder was charged under sections A and/or B." The State suggests that this court should remand this case to the district court for "review of certain documents for the limited purpose of determining which alternative of the stalking [statute] formed the basis of Fielder's prior convictions."

Our Supreme Court recently addressed the classification of a prior, out-of-state conviction, addressed for the first time on appeal, when the State had not presented evidence in the district court to show which version of an out-of-state crime was the basis for the prior conviction. *State v. Obregon*, 309 Kan. 1267, 1269, 1274-75, 444 P.3d 331 (2019). Because the out-of-state statute was not, on its face, identical to or narrower than the comparable Kansas statute, the Kansas Supreme Court remanded to the district court so that the State could try to prove the version by a preponderance of the evidence and the district court could reconsider the classification. See 309 Kan. at 1275-76.

5

But the State fails to recognize the material difference between *Obregon* and this case. As Fielder points out in his reply brief, subsection (A) of the Oklahoma stalking statute sets out the elements of *misdemeanor* stalking, while subsection (B) and the remaining elemental subsections set out the elements of *felony* stalking. Fielder's PSI report showed that he was convicted of misdemeanor stalking under Okla. Stat. tit. 21, § 1173, so he necessarily was convicted under subsection (A), which is the only subsection dealing with misdemeanor stalking. Thus, the question is whether the elements of Okla. Stat. tit. 21, § 1173(A) (2015) are identical to or narrower than the Kansas stalking statute in effect when Fielder committed his current Kansas crimes of conviction.

In Kansas, misdemeanor stalking is—and was when Fielder committed his current crimes—statutorily defined as:

> "(1) Recklessly engaging in a course of conduct targeted at a specific person which would cause a reasonable person in the circumstances of the targeted person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear; or
> "(2) engaging in a course of conduct targeted at a specific person with knowledge that the course of conduct will place the targeted person in fear for such person's safety or the safety of a member of such person's immediate family." K.S.A. 2018 Supp. 21-5427(a).

Fielder argues that the Oklahoma statute is broader than the Kansas statute in at least two ways. First, he focuses on the elements that require the victim to suffer emotional distress. Fielder points out that Kansas' statute requires that the targeted individual fear for their own safety or the safety of a member of their immediate family, but the Oklahoma statute does not require such fear, recognizing the crime of stalking when a reasonable person would feel "terrorized, frightened, intimidated, threatened, harassed, or molested." The State responds by arguing that the Kansas stalking statute

6

defines "course of conduct" to include threatening the targeted person, following or approaching them, damaging his or her property or that of an immediate family member, placing an object on the targeted person's property or that of an immediate family member, and injuring the targeted person's pet or a pet of an immediate family member. See K.S.A. 2018 Supp. 21-5427(f)(1). Although the State accurately describes Kansas' stalking statute, it does not explain how the definition of a "course of conduct" by the offender affects the requirement that the targeted individual suffer from a reasonable fear of physical harm. What may constitute a "course of conduct" does not broaden the elemental requirement that such course of conduct inspire, in one way or another, a reasonable fear for one's safety or the safety of one's immediate family.

To sustain a conviction of misdemeanor stalking in Kansas, the State must prove, among other things, that the defendant (1) caused the targeted individual to fear for his or her safety or the safety of an immediate family member or (2) engaged in conduct knowing that it would place the targeted person in fear for his or her safety or the safety of an immediate family member. See K.S.A. 2018 Supp. 21-5427(a)(1), (2). In other words, in Kansas, fear for the safety of oneself or an immediate family member is an element of misdemeanor stalking. But to sustain a conviction of misdemeanor stalking in Oklahoma, there is no similar requirement about a safety concern. Even if the targeted person is not afraid for his or her physical safety, a stalking conviction can rest on the targeted individual feeling intimidated, harassed, or molested.

Fielder also argues that Oklahoma's statutory definition of "immediate family" is broader than Kansas' statutory definition of the same term, but we need not address this claim. If any one element of the out-of-state offense is broader than the Kansas crime to which it is compared, the offenses are not comparable for criminal history calculations. See *Wetrich*, 307 Kan. at 562. Because Kansas restricts criminal stalking to situations that could reasonably inspire fear for an individual's safety and Oklahoma does not, the

Oklahoma statute is broader, which defeats comparability with the Kansas crime of stalking. See 307 Kan. at 564.

To sum up, because when Fielder committed his current crimes, Kansas did not have a comparable offense to Oklahoma's misdemeanor stalking, Fielder's prior Oklahoma misdemeanor convictions for stalking had to be classified as nonperson crimes. As nonperson misdemeanors, they could not be aggregated to create a person felony for criminal history purposes under K.S.A. 2018 Supp. 21-6811(a). Thus, we vacate Fielder's sentence and remand for the district court to resentence him using the correct criminal history score.

Sentence vacated and remanded with directions.