NOT DESIGNATED FOR PUBLICATION

No. 122,584

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PAUL CORBY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court, CHRISTOPHER M. MAGANA, judge. Opinion filed June 4, 2021. Affirmed in part and dismissed in part.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and BUSER, JJ.

GARDNER, J.: Paul Corby argues that the district court erred in revoking his probation and ordering him to serve his underlying prison sentence. Because the district court was statutorily authorized to revoke Corby's probation and Corby does not establish that an abuse of discretion occurred, we affirm that decision. Corby also argues that his underlying sentence is illegal because insufficient evidence supports classifying two of his prior felonies as felonies. But Corby admitted at sentencing that his presentence investigation report (PSI) was correct and he does not now allege that his PSI was incorrect, so we dismiss that claim.

1

*Factual and Procedural Background*

In October 2019, under a plea agreement, Paul Corby pleaded guilty in Sedgwick County District Court to one count of possession of methamphetamine and one count of possession of an opiate. The PSI calculated his criminal history score as B, based on two person felonies: a 1999 conviction for fleeing or attempting to elude an officer in violation of K.S.A. 8-1568 and a 2015 conviction for that same crime. Thus, Corby's presumptive sentence was imprisonment.

In December 2019, however, the district court granted Corby's motion for a dispositional sentencing departure and sentenced him to 12 months of probation, with an underlying controlling prison sentence of 34 months. But Corby was facing a hold on a separate case in Ford County. The district judge ordered Corby to report to the Sedgwick County probation office within 24 hours of being released from custody—whether released in Sedgwick County, Ford County, or elsewhere. So after being sentenced here, Corby was transferred to the Ford County jail.

Corby was released from the Ford County jail on December 23, 2019, but he failed to report to Sedgwick County probation within 24 hours of his release. Rather, he remained at large until he was taken into custody on a probation violation warrant in February 2020. Corby then waived his right to an evidentiary hearing to establish his probation violations. Corby admitted to having violated his probation by:

1. failing to report;
2. associating with a person or persons of harmful or disreputable character; and
3. violating his curfew.

The district court revoked Corby's probation and ordered him to serve his underlying sentence. Corby now appeals, challenging the revocation of his probation and the legality of his sentence.

*Did the District Court Err by Revoking Corby's Probation?*

Both parties acknowledge that the district court had the statutory authority to revoke Corby's probation without imposing intermediate sanctions because probation resulted from a dispositional sentencing departure. See K.S.A. 2018 Supp. 22-3716(c)(9)(B). And Corby does not dispute that he violated the terms of his probation. The sole question is whether the district court abused its discretion by revoking Corby's probation and ordering him to serve his underlying sentence. Corby argues that because he committed only "mere technical, nonviolent violations," no reasonable person would have sent him to prison.

"Where the issue is the propriety of the sanction imposed by the district court for a probationer's violation of the terms and conditions of probation, the standard of review is an abuse of discretion." *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). "Relevant here, a court abuses its discretion if no reasonable person would have taken the court's position." *State v. Dunham*, 58 Kan. App. 2d 529, 472 P.3d 604 (2020).

Corby makes a policy argument that courts should reserve imprisonment for harmful offenders who leave the court no other choice, and that probation promotes rehabilitation and resocialization in a way that prison does not. He argues that his probation violations and his underlying drug crimes were not violent and endangered only himself. Because "[p]rison simply isn't the place for nonviolent offenders," Corby argues the district court abused its discretion by ordering him to serve his underlying prison term.

3

But the Legislature, not the courts, make policy.

> "Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts." *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016).

And the Legislature set the public policy here by determining that Corby's presumptive sentence for his drug crimes was imprisonment. This dooms Corby's argument that no reasonable person would order him to prison for drug crimes and probation violations.

The question for this court is simply whether the district court abused its discretion by revoking Corby's probation and ordering him to serve his underlying prison sentence. As the district court found at Corby's probation revocation hearing, Corby had an extensive criminal history extending over 20 years. Despite the fact that the district court granted Corby probation in a presumptive imprisonment case, Corby failed to report to community corrections upon his release from custody—the very first task he needed to do to comply with the conditions of his probation. And even if we accept Corby's explanation that because he was released from custody in a different county he was unable to timely report in Wichita, he still failed to turn himself in at the first opportunity. Instead, he remained at large for about six weeks until police arrested him in Wichita. A reasonable person could have agreed with the district court's decision to revoke probation and order Corby to serve his underlying prison sentence. Thus, the district court did not abuse its discretion in doing so.

*Is Corby's Sentence Illegal?*

For the first time on appeal, Corby raises an issue of an illegal sentence. His sole argument is that insufficient evidence at sentencing showed that his prior convictions

classified as person felonies were in fact felonies. As he contends, and the State does not dispute, he may raise this argument for the first time on appeal. K.S.A. 2020 Supp. 22-3504(a) ("The court may correct an illegal sentence at any time while the defendant is serving such sentence."); *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016).

An illegal sentence is one that is "[i]mposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." K.S.A. 2020 Supp. 22-3504(c)(1). The Kansas Supreme Court has made clear that "where there has been a misclassification of a prior conviction, the resulting sentence is illegal and can be corrected at any time pursuant to K.S.A. 22-3504." *Dickey*, 305 Kan. at 220.

"Typically we describe the classification issue as a question of law, but it is a bit more nuanced [here] because it is the State's burden to prove by a preponderance of the evidence that the defendant committed a crime for which classification is appropriate." *State v. Obregon*, 309 Kan. 1267, 1275, 444 P.3d 331 (2019). When reviewing the classification of a prior conviction, an appellate court determines whether substantial competent evidence supports the district court's finding that the State met this burden. 309 Kan. at 1275.

Corby's sole argument is that he is serving an illegal sentence because his PSI failed to "contain sufficient information to support that his two person felonies are in fact person felonies." Corby admits that his PSI showed his two prior convictions for fleeing and eluding under K.S.A 8-1568. But because the PSI did not cite a subsection of that statute, he argues it is possible that his convictions under that statute were misdemeanors, not felonies. See K.S.A. 8-1568 (c)(1) (making the violation of subsection (a) a misdemeanor upon the first and second convictions, but a felony on the third conviction).

5

Yet Corby makes no mention of K.S.A. 8-1568 (c)(2) (making the violation of subsection (b) a felony regardless of the number of prior convictions).

Our statutes are very specific about the burden of proof as to criminal histories. K.S.A. 2020 Supp. 21-6814(a) provides that an "offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge." If a defendant does not dispute the PSI, the PSI meets the state's burden of proof: "Except to the extent disputed [by the defendant], the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history." K.S.A. 2020 Supp. 21-6814(b). And a defendant has a duty to notify the district attorney and the court of any error: "Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet." K.S.A. 2020 Supp. 21-6814(c). We follow those statutes here.

Corby's PSI showed his two prior convictions for fleeing and eluding under K.S.A 8-1568, which he now challenges, were "AFP," meaning adult felony person offenses, not misdemeanors. Rather than object at the sentencing hearing, Corby personally admitted that his criminal history in the PSI was correct. Because Corby made that admission in open court, the district court had no reason to determine by a preponderance of the evidence what his criminal history was. See K.S.A. 2020 Supp. 21-6814(a).

Nor did Corby notify the district court or the district attorney of any alleged error in his criminal history worksheets as K.S.A. 2020 Supp. 21-6814(b) and (c) require. That statute establishes a specific procedure for challenging "any error" in a PSI. See *State v. Schow*, 287 Kan. 529, 536-37, 197 P.3d 825 (2008).

Corby did not dispute his PSI or criminal history worksheet in accordance with subsection (c), thus "the summary of the offender's criminal history prepared for the court by the state [satisfied] the state's burden of proof regarding [Corby's] criminal history." K.S.A. 2020 Supp. 21-6814(b).

As the statute states, the time and place to challenge the fact of a conviction listed on a defendant's criminal history in the PSI is when the defendant receives the worksheet, before he or she is sentenced. This makes sense because the defendant's criminal-history score affects the defendant's presumptive sentence under the Kansas Sentencing Guidelines Act. And when a defendant disputes the existence of a conviction at that time, the procedures for fairly handling that challenge are established by the statute above. That statute tells the parties what the defendant's notice of an error must state: who has the burden of producing evidence regarding criminal history; how much time the State has to produce more evidence; and what standard of proof applies. Permitting a defendant to challenge the existence of his or her conviction used to determine one's sentence in a collateral attack filed years after a conviction is unbounded by these procedures that should govern such a challenge.

Corby asserts that rather than follow the relevant statute above, we should follow the general provisions of *Obregon*—a case that examined the comparability of out-of-state crimes with alternative means. *Obregon* held:

> "[I]t is the State's burden to prove by a preponderance of the evidence that the defendant committed a crime for which classification is appropriate. See K.S.A. 2018 Supp. 21-6814; *State v. Hughes*, 290 Kan. 159, 162, 224 P.3d 1149 (2010). And when the crime in question is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification.

7

"On appeal, the district court's finding that the State met its crime classification burden must be supported by substantial competent evidence to withstand scrutiny. 290 Kan. at 162. The presentence investigation summary frequently can satisfy the State's burden absent defendant's objection, but more is required when the summary does not indicate which version of the out-of-state offense the defendant committed. See K.S.A. 2018 Supp. 21-6814(b), (c). And failing additional proof, the person-crime classification is erroneous as a matter of law. See *Wetrich*, 307 Kan. at 562 (elements of out-of-state offense must be identical to, or narrower than, elements of Kansas comparator)." 309 Kan. at 1275.

We see many ways to distinguish *Obregon.* But the chief one making it inapplicable here is that *Obregon* did not find that the defendant admitted his criminal history in open court. See *State v. Obregon*, No. 117,422, 2018 WL 911215 (unpublished opinion) (Kan. App. 2018), *aff'd in part, rev'd in part*, 309 Kan. 1267 (2019). As a result, in *Obregon*, because the crime in question was an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State had the burden to establish that the defendant committed a version of the offense supporting the person classification. See K.S.A. 2020 Supp. 21-6814(a).

Not so here. Either an admission by the defendant or proof by the State is necessary—not both. "Or" does not mean "and." These two terms are not treated as interchangeable and should be followed when their strict meaning is consistent with the statute. See *State ex rel. Stephan v. Martin*, 230 Kan. 747, 753, 641 P.2d 1011 (1982) (finding an exception to that rule when a typographic error contradicted clear legislative intent). The plain language of K.S.A. 2020 Supp. 21-6814(a) requires only one or the other—"an offender's criminal history shall be admitted in open court by the offender *or* determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge." (Emphasis added.). And reading "or" in the disjunctive is consistent with the statute. We thus decline Corby's invitation to ignore the specific language of the controlling statute in favor of the dissimilar facts and law in *Obregon.*

We thus find that the State's burden of proof at the sentencing hearing regarding Corby's criminal history was satisfied as K.S.A. 2020 Supp. 21-6814(b) unambiguously states. See *State v. Crossman*, No. 122,216, 2021 WL 300876, at *1-4 (Kan. App. 2021) (unpublished opinion) (rejecting claim of illegal sentence where defendant did not object to PSI at sentencing and did not assert on appeal that the PSI was factually incorrect).

Corby never even argues that his prior convictions for fleeing and eluding were misdemeanor offenses rather than felonies. He simply argues that they *might have been* misdemeanors. Posing a mere possibility and making conclusory assertions that contradict the admissions one made at sentencing is an insufficient basis for us to remand for correction of an illegal sentence. As a result, we dismiss Corby's claim that his sentence was illegal.

Affirmed in part and dismissed in part.