NOT DESIGNATED FOR PUBLICATION

No. 128,225

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERIC SHAWN GETTINGS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed April 17, 2026. Sentence vacated in part and case remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM: The parties all agree that Eric Shawn Gettings received an illegal sentence when the court sentenced him, in part, to lifetime parole with electronic monitoring instead of a mandatory period of postrelease supervision. The only dispute is the appropriate length of his postrelease supervision. Because the court has not yet entered the order of postrelease supervision, we vacate the portion of his sentence that ordered lifetime parole and remand for the district court to order postrelease supervision and consider the appropriate length of that supervision.

1

In July 2024, Gettings pleaded guilty to one count of criminal sodomy and three counts of indecent liberties with a child, all felonies, for acts occurring between April and June 2022. In exchange for his guilty plea, the State agreed to dismiss one count of aggravated criminal sodomy. This resulted in all the remaining crimes as being on-grid crimes under the Revised Kansas Sentencing Guidelines Act, K.S.A. 21-6801 et seq. In other words, they were not subject to the off-grid provisions of Jessica's Law.

Before entering his plea, Gettings reviewed the acknowledgment of rights and entry of plea, which identified the constitutional rights Gettings would be waiving as a result of the plea. In this document, Gettings also acknowledged that he was 18 years of age or older at the time of the offenses and that the case required lifetime postrelease supervision.

During the plea hearing, Gettings told the court that he was 54 years old. The district court discussed Gettings' rights, including the right to have a jury determine whether he was guilty of the offenses. Gettings also acknowledged that he was 18 years of age or older at the time of the offenses and that he would be subject to lifetime postrelease supervision. The district court explained what lifetime postrelease supervision meant. Gettings acknowledged that he signed the plea agreement. Gettings stated he was pleading guilty because he was guilty. The district court had Gettings provide a factual basis for his crimes.

The district court found that Gettings understood the nature of the charges against him, the consequences of his plea, and the penalties that may be imposed against him. The district court found that Gettings executed a free, knowing, intelligent, and voluntary waiver of his rights and entered pleas of guilty. The district court found Gettings guilty of the four charges.

In September 2024, at sentencing, the State asked the court to follow the plea agreement and noted that the case required lifetime postrelease supervision. The district court judge corrected the State, explaining that the presentence investigation report showed that the sentence should include lifetime parole with electronic monitoring. Neither party alerted the district court that this was in error. Consistent with the plea agreement, the district court sentenced Gettings to 61 months for the one count of criminal sodomy and 34 months for each of the three counts of indecent liberties with a child, each count to be served consecutively.

The court emphasized that Gettings' original charges subjected him to life in prison for a minimum of 25 years, and he received a substantial benefit from the plea negotiations. The court noted that Gettings' sentence was capped by the double rule, so that the total term of Gettings' incarceration was 122 months, plus lifetime parole with electronic monitoring.

On the sentencing journal entry, the district court checked the box under each charge that provided for lifetime parole/electronic monitoring, citing K.S.A. 21-6604(r).

Gettings timely filed a notice of appeal.

ANALYSIS

Gettings contends that the portion of his sentence that ordered parole, with electronic monitoring after he served his prison term, should be vacated. He then asks this court to examine the record, find he was not adequately advised of his right to have a jury decide the term of his postrelease supervision, and sentence Gettings to 60 months of postrelease supervision.

3

*Standard of review and legal principles*

Whether a sentence is illegal is a question of law over which appellate courts exercise unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). An illegal sentence is a sentence: (1) imposed by a court without jurisdiction; (2) that does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) that is ambiguous about the time and manner in which it is to be served. K.S.A. 22-3504(c)(1); *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022).

The State concedes that Gettings' sentence is illegal. We agree. Although his underlying sentence was proper—his sentence was within the applicable grid box—Gettings should have been sentenced in accordance with the provisions that applied to the sexually violent crimes to which he pled. "Persons sentenced for crimes, other than off-grid crimes, . . . or persons subject to subparagraph (G), *will not be eligible for parole*, but will be released to a *mandatory* period of postrelease supervision upon completion of the prison portion of their sentence." (Emphases added.) K.S.A. 22-3717(d)(1). So as a matter of law, parole was not an option.

*The proper remedy is to vacate and remand with instructions for the district court to determine and impose the applicable postrelease supervision term.*

Once it is determined that mandatory postrelease supervision is required, the only remaining question is the length of that supervision. If the offender is 18 years of age or older at the time of the offense the terms of postrelease supervision shall be for life. If the offender is under the age of 18, the term shall be 60 months. K.S.A. 22-3717(d)(1)(G)(i), (ii). This is where the parties disagree.

Gettings argues this court must vacate the illegal part of his sentence, and remand it to the district court with directions to impose a 60-month period of postrelease

supervision, as that term conforms to the applicable statutory provision, K.S.A. 22-3717(d)(1)(G)(ii), relying on *State v. Nunez*, 319 Kan. 351, 356-57, 554 P.3d 656 (2024).

We first note that this situation is not novel. Kansas courts have repeatedly addressed situations where district courts erroneously imposed lifetime postrelease supervision when the defendant should have been subject to lifetime parole instead—the flipside of what happened here. See *State v. Brown*, 320 Kan. 426, 432-33, 569 P.3d 909 (2025); *State v. Boswell*, 314 Kan. 408, 418, 499 P.3d 1122 (2021). The Supreme Court has established that the improper imposition of lifetime postrelease supervision may be vacated on appeal, allowing the district court to correct the judgment without engaging in further proceedings. *Brown*, 320 Kan. at 433.

The reverse situation occurred here. The district court erroneously imposed parole instead of lifetime postrelease supervision. But simply switching out parole with postrelease supervision is not appropriate because of the difference between the two.

In *State v. Cash*, 293 Kan. 326, 330, 263 P.3d 786 (2011), the court clarified that parole "means that if [the prisoner] ever leaves prison it will be because the successor to the parole board has granted him parole, not because the sentencing court ordered postrelease supervision." In other words, parole is discretionary early release from prison and an inmate does not receive parole automatically. Instead, the parole board decides whether to grant it. Postrelease supervision, on the other hand, is automatic upon release from incarceration, not discretionary.

Correcting a sentence to allow parole eligibility is straightforward because eligibility flows directly from statute and does not require the court to impose a new supervisory term. By contrast, replacing parole with lifetime or 60-month postrelease supervision requires the court to impose a specific, mandatory term of supervision and

5

eliminates the possibility of early release. That is a substantive change to the sentence, not a simple clerical correction.

Even so, Gettings warns that if we direct the district court on remand to impose lifetime postrelease supervision, "it would first have to order the district court to violate [his] constitutional right to a jury trial and find he was over the age of 18 pursuant to K.S.A. 22-3717(d)(1)(G)(i)," allegedly implicating *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); see *Nunez*, 319 Kan. at 357. But no such ruling has been made, and no term of postrelease supervision has been imposed. Gettings therefore *anticipates* a potential error that has not occurred. He acknowledges as much, stating that "the court has *not yet violated* Mr. Gettings's right to a jury trial as set forth by *Apprendi*."

Unlike in *Nunez*, where the court conducted a harmless error analysis to address an actual sentencing error, there is no further sentencing error to review here. See 319 Kan. at 355-56. Because Gettings' claim rests on a speculative future determination, the argument is premature and provides no basis for the relief he seeks. Any opinion at this stage would therefore be advisory.

Finally, Gettings relies on *State v. Obregon*, 309 Kan. 1267, 1268-69, 444 P.3d 331 (2019), to argue that the only appropriate remedy when the constitutional right to have a jury determine a firearm enhancement has been violated is to remand for resentencing without the enhancement. But *Obregon* is distinguishable because in that case this court first determined that the district court applied the enhancement in violation of *Apprendi*. The panel then ordered the case remanded for a jury determination regarding the enhancement. The Supreme Court reversed, holding that special jury verdicts were not allowed in Kansas. So once the Court of Appeals found that the firearm enhancement was in violation of Obregon's constitutional rights, they were required to remand the case for resentencing without the enhancement. 309 Kan. at 1277-78.

Here, the district court never applied an "enhancement" to Gettings' sentence. Once the district court actually corrects Gettings' sentence to postrelease supervision, at that point Gettings may raise any claims that he believes have merit related to the term of supervision. And if that includes an *Apprendi* challenge, then he can argue to the district court whether he clearly and unequivocally was advised of his constitutional right to have a jury determine his age.

We find that when a district court fails to impose mandatory postrelease supervision, the appropriate remedy is to vacate the deficient portion of the sentence and remand the case to the district court for imposition of the appropriate term of postrelease supervision. Accordingly, the portion of Gettings' sentence subjecting him to lifetime parole with electronic monitoring is vacated as illegal and the case is remanded to the district court for the imposition of the applicable postrelease supervision term based on a review of the facts and the law.

Sentence vacated in part and case remanded with directions.