NOT DESIGNATED FOR PUBLICATION

No. 122,681

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALLEN GENE DULANEY JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Geary District Court; BENJAMIN J. SEXTON, judge. Opinion filed June 25, 2021.
Convictions affirmed, sentence vacated, and case remanded for resentencing.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Michelle L. Brown*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.


PER CURIAM: Allen Gene Dulaney Jr. was arrested after a low-speed chase through town ended when he crashed into a light pole. Dulaney and his vehicle were searched and methamphetamine, drug paraphernalia, and firearms were located on his person and in the vehicle. Dulaney was appointed counsel, but throughout large portions of the case, Dulaney and his counsel had communication problems. Dulaney asks that we find his counsel was ineffective due to these communication problems. He also argues that his sentence was illegal, with which the State agrees.

1

Because we find that his sentence was illegal, we must vacate his sentence and remand the case for resentencing consistent with this opinion. But we reject Dulaney's claim that his counsel was ineffective and affirm his convictions.

FACTUAL AND PROCEDURAL HISTORY

In August 2017, Lieutenant Dustin Murphy attempted to perform a traffic stop on Dulaney. After Murphy activated his lights and sirens, Dulaney continued to drive without pulling over. After driving at least 16 blocks, Dulaney stopped after running into a light pole. During the chase, Lieutenant Cory Odell witnessed Dulaney commit several traffic violations.

After Dulaney crashed, he was removed from his vehicle and searched. Murphy found a clear glass smoking device, which he identified as a pipe used to smoke methamphetamine, on Dulaney. Murphy also searched the vehicle Dulaney had been driving while it was still at the scene of the crash. Murphy found a pouch inside the vehicle which contained a used syringe and another methamphetamine smoking device.

The vehicle was towed, and Murphy subsequently did a more thorough search of the vehicle. Murphy found $475 in cash, a silver revolver with a pink handle, a pouch which contained 15 baggies containing methamphetamine, a digital scale, a baggie of marijuana, another glass smoking device, another syringe, and two pills that were identified as amphetamine dextroamphetamine. Murphy also located four more firearms in the trunk of the vehicle. A detective, Levi Whitebread, also searched the car and found a glass jar containing methamphetamine.

Murphy spoke with Dulaney about the firearms and Dulaney said that he was trying to get rid of them. Dulaney also said that he supplied methamphetamine to several individuals in the area. According to Dulaney, he would get an ounce of

methamphetamine a week. Dulaney said that he would use some of it, give some away, and the rest he would sell.

Ultimately, Dulaney was charged with possession of methamphetamine with intent to distribute, felony fleeing or attempting to elude a police officer, criminal possession of a firearm by a convicted felon, criminal use of weapons, possession of drug paraphernalia, and several traffic infractions. The district court appointed Allen Angst to represent Dulaney.

In October 2017, Dulaney wrote a letter to the court expressing his displeasure with Angst. A month later, at a motions hearing, Dulaney informed the court that he wished for his attorney to withdraw. According to Dulaney, Angst did not answer his phone calls, did not inform him of court dates and the purpose behind hearings, had not shown him evidence, failed to have his bond reduced, among other similar issues. Angst expressed concern with Dulaney's accusations and what Dulaney seemed to expect. As Angst explained, he was doing everything he could to defend Dulaney but Dulaney seemed to believe that it was not enough. The district court denied Dulaney's request to have Angst removed as his attorney.

At a motion hearing another month later, Dulaney again requested new counsel. According to Dulaney, he was "repeatedly getting lied to." When the court asked Angst about how communication was going between him and Dulaney, Angst said that there were problems and that Dulaney refused to accept Angst's recommendations and advice. Dulaney said that Angst told him he was going to get probation. Angst denied Dulaney's assertion. The district court believed that Angst was able to represent Dulaney and that Angst and Dulaney were capable of communicating about the case. As the court saw it, Angst and Dulaney just had a difference of opinion.

3

Angst followed up with a written motion to withdraw the following day. The district court addressed the motion on December 18, 2017, the day the jury trial was scheduled to begin. The district court denied the motion, reasoning that Angst could adequately represent Dulaney and that, in truth, Dulaney was just unhappy about his imminent trial and was seeking to delay its beginning.

The case proceeded to trial, and the jury found Dulaney guilty of possession with intent to distribute methamphetamine, fleeing or attempting to elude the police, criminal use of weapons, and possession of drug paraphernalia. The jury found Dulaney not guilty of criminal possession of a firearm by a convicted felon. The district court found Dulaney guilty of the remaining traffic infractions.

At sentencing, Angst motioned for a downward departure so that Dulaney could seek treatment for his drug problems. The court denied his request for a departure and sentenced him to a controlling sentence of 123 months' incarceration. The sentence was a result of Dulaney's criminal history score of E and his primary offense of possession with intent to distribute, a severity level 2 drug felony. The court sentenced Dulaney to 117 months' imprisonment for the possession with intent to distribute charge and ordered a 6-month sentence for criminal use of a weapon to be served consecutively. The parties and the district court believed that 117-month sentence for possession with intent to distribute was the standard amount of imprisonment for Dulaney's criminal history given the charge. All other sentences were ordered to be served concurrently to the primary offense. The court also found that special rule 32—drug felony while in possession of a firearm—applied. During sentencing, the State noted that it was not asking for the firearms finding because it was not originally charged in the complaint.

Dulaney appealed his convictions but later moved to voluntarily dismiss his appeal, apparently as part of a plea deal in a companion case. The mandate dismissing the appeal was issued November 21, 2018.

Dulaney filed a pro se K.S.A. 60-1507 motion on May 14, 2019. Dulaney alleged that Angst was ineffective, that the trial judge committed judicial misconduct, and that the State committed misconduct. He was appointed counsel who filed an amended 60-1507 motion.

The district court held an evidentiary hearing on Dulaney's motion. At the hearing, Dulaney testified that Angst met with him to discuss his case several times. He also acknowledged that Angst provided him with discovery materials. According to Dulaney, he first became unhappy with Angst's representation after Angst told him that he would be getting probation, and Dulaney learned that was not the case. Dulaney also indicated that he had told Angst that he wanted a different attorney at least 50 times.

Dulaney also discussed his statements at the December 14, 2017, motion hearing. Dulaney explained that Angst lied to him about filing motions that were never filed and said that some of the motions Dulaney wanted filed would be frivolous. Dulaney also expressed displeasure that Angst did not seek to admit a recording of Dulaney's 911 call while he was being pursued by police. Dulaney explained that Angst told him that the call was irrelevant to the case, but Dulaney did not believe him. According to Dulaney, Angst did not have any meetings with him to prepare for trial. Angst did advise Dulaney against taking the stand at trial but said that it was Dulaney's choice.

Dulaney also said that Angst did not properly investigate the case because if he had Angst would have realized that Dulaney was a drug addict and just needed treatment. He also testified that he believed Angst should have argued there was not probable cause for the police to initially pull him over in this case. However, he also acknowledged that he was pulled over because of an outstanding warrant.

Dulaney also explained that after his conviction in the current case, Dulaney made a complaint to the Disciplinary Administrator regarding Angst's representation of him. At that point, Angst withdrew from Dulaney's remaining criminal case.

Angst also testified at the hearing. According to Angst, he told Dulaney that if he wanted any shot at probation that it would be in his best interests to waive his preliminary hearing. Angst was adamant that he never promised that Dulaney would receive probation in his case. Moreover, Angst believed that based on the evidence he had there was no chance that he could successfully argue that there was not probable cause to bind Dulaney over given the outstanding warrant, police chase, and evidence found on Dulaney and in his vehicle.

As for Dulaney's arguments that the 911 call would have exonerated him, Angst testified that he did not seek to have it admitted at trial because it was irrelevant to the case. Angst noted that he requested bond reductions for Dulaney on four separate occasions. He also testified that he filed a successful motion for furlough after Dulaney's mother died. Finally, Angst testified that his representation of Dulaney was not impacted by the district court's denial of his motion to withdraw.

The district court found that Dulaney did not present any evidence of prosecutorial misconduct and deemed any such arguments abandoned. The court took the remaining issues under advisement and issued a written order on January 9, 2020.

The district court denied Dulaney's motion. The court noted that Dulaney made several allegations but provided few facts to back them up. The court did not find Dulaney's assertion that Angst promised that he would get probation credible. And Dulaney's argument that Angst did not do certain things as requested was unpersuasive because the requested actions were either not possible or would have had no impact on the case. Overall, the district court did not find any weight to Dulaney's allegations of

6

ineffective assistance of counsel. Further, the district court noted that, even if Angst was ineffective, Dulaney failed to establish that he was prejudiced. The district court also found that the trial judge did not err by denying Angst's motions to withdraw.

Dulaney timely appeals.

ANALYSIS

On appeal, Dulaney raises two issues. First, he argues that his sentence is illegal because a six-month enhancement was added to his sentence without an appropriate finding by the jury. Second, he argues that the district court erred in denying his K.S.A. 60-1507 motion because his counsel had an active conflict of interest.

*Dulaney's sentence was illegal.*

A sentence is illegal under K.S.A. 2020 Supp. 22-3504(c)(1) when: (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) it is ambiguous about the time and manner in which it is to be served. A court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 2020 Supp. 22-3504(a). A defendant may challenge a sentence even for the first time on appeal. *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019). Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which the appellate court has unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019).

Dulaney argues that the court illegally sentenced him by adding an additional six months to his sentence as part of a special rule even though the jury did not make the requisite finding. The State agrees.

7

Under K.S.A. 2020 Supp. 21-6805(a), Dulaney faced an applicable sentence of 116, 111, or 105 months because of his criminal history score of E and the severity of his conviction for possession with intent to distribute methamphetamine, a severity level 2 felony. However, that sentence could be enhanced with an additional six months' imprisonment under K.S.A. 2020 Supp. 21-6805(g)(1)(A)—if the trier of fact made a specific finding that Dulaney possessed a firearm. The PSI in this case apparently indicated that Dulaney faced an applicable sentence of 122, 117, or 111 months— essentially adding in the six-month enhancement.

But the jury did not make a special finding that Dulaney possessed a firearm during the commission of his crimes, and his conviction for criminal use of a weapon cannot be used as a substitute finding. See *State v. Housworth*, No. 115,836, 2017 WL 2834502, at *7 (Kan. App. 2017) (unpublished opinion). Because the State did not seek a specific jury finding on the issue at trial, it cannot now seek a special finding on remand. The proper remedy, as acknowledged by the State, is to remand with instructions to resentence Dulaney without the six-month enhancement. See *State v. Obregon*, 309 Kan. 1267, 1277-78, 444 P.3d 331 (2019).

*The district court did not err by denying Dulaney's 60-1507 motion.*

A district court has three options when handling a 60-1507 motion. The standard of review depends upon which of these options a district court used. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018). When the court holds an evidentiary hearing, like it did here, an appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

When arguing ineffective assistance of counsel, a defendant must generally establish that the performance of defense counsel was deficient under the totality of the circumstances and there is a reasonable probability the jury would have reached a different result absent the deficient performance. *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

Before the district court, Dulaney argued that his trial counsel was ineffective for a variety of reasons. On appeal, he defines his "most significant claim pertaining to ineffective assistance of counsel is that [his appointed attorney] labored under an actual/active conflict - due to the deteriorated attorney/client relationship - which adversely affected the representation." Moreover, Dulaney argues that his trial counsel was per se ineffective at sentencing because he failed to address the sentencing error discussed above. These are his only claims on appeal.

Dulaney attempts to frame his claim as something different than a typical ineffective assistance of counsel claim using the standards set forth in *Salary*. Instead, he frames it as a conflict of interest that must be analyzed under the standards set out in *Mickens v. Taylor*, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). If he is correct, he contends that he is not required to show that he was prejudiced by counsel's conflict of interest. Because Dulaney rests his argument on *Mickens*, a discussion of that case is in order.

Walter Mickens Jr. was convicted of capital murder and sentenced to death. He petitioned the court for a writ habeas corpus on the grounds that the lead attorney in his case had a conflict of interest—he was representing the victim on assault and concealed weapons charges at the time of the murder. Counsel did not disclose this fact to the court, co-counsel or Mickens. Accordingly, his attorney was ineffective due to a conflict of interest and prejudice should be presumed.

9

In analyzing Mickens' claim, the Supreme Court reiterated its general rule that a defendant alleging ineffective assistance of counsel must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. 535 U.S. at 166 (citing *Strickland v. Washington*, 466 U.S. 668, 685-86, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). An exception to this general rule exists when the assistance of counsel has been effectively denied entirely or denied during a critical stage of the proceeding. Known as the *Cronic* exception, based upon *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), if the exception applies, prejudice is presumed. Likewise, an exception has been recognized when counsel is forced to represent codefendants over their timely objection, unless the trial court determines there is no conflict. *Mickens*, 535 U.S. at 162 (citing *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 [1978]). Such a situation results in an automatic reversal. But the Supreme Court refused to extend the automatic reversal rule absent a timely objection. If there is no timely objection, the defendant "must demonstrate that 'a conflict of interest actually affected the adequacy of his representation.'" *Mickens*, 535 U.S. 168 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-49, 100 S. Ct. 1708, 64 L. Ed. 2d 333 [1980]).

Relying on language in *Wood v. Georgia*, 450 U.S. 261, 271-73, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981), Mickens argued that because the conflict of interest was readily apparent the court had a duty to inquire and failure to do so mandated the nuclear option—automatic reversal. The Supreme Court disagreed. It interpreted *Wood* to define "'an actual conflict of interest'" to mean "a conflict that *affected counsel's performance*." *Mickens*, 535 U.S. at 171. "The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any other way renders the verdict unreliable." 535 U.S. at 173. The Supreme Court concluded that Mickens must establish that the conflict adversely affected his counsel's performance and his failure to do so was fatal to his claim. 535 U.S. at 174.

We note that in his majority opinion Justice Scalia did discuss other types of attorney conflicts; for example, when counsel's representation somehow implicates counsel's personal or financial interests. Our Supreme Court has termed this the "*Mickens* reservation." *State v. Galaviz*, 296 Kan. 168, 184-85, 291 P.3d 62 (2012) (recognizing *Mickens* as controlling precedent under the Sixth Amendment to the United States Constitution). Justice Scalia noted that several circuit courts have found personal or financial conflicts of interests, like a book deal, a job in the prosecutor's office, teaching classes to IRS agents on how to detect fraud, a romantic entanglement with the prosecutor, or fear of antagonizing the trial judge may implicate the Sixth Amendment right to counsel. *Mickens*, 535 U.S. at 174-75. But he noted that the Supreme Court's prior caselaw did not support such an "expansive application" of conflict of interest. 535 U.S. at 175. He went on to explain, quoting *Sullivan*, that until "'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance of counsel.'" 535 U.S. at 175. And finally, the court noted that even the breach of an ethical standard does not necessarily translate to the denial of the Sixth Amendment guarantee of assistance of counsel. 535 U.S. at 176 (quoting *Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 [1986]). The majority in *Mickens* did not "articulate what additional burden, e.g., prejudice or adverse effect, a defendant must satisfy before receiving relief based on" conflicts of interest such as "counsel's personal or financial interests," it left that decision for another day. *Sola-Morales v. State*, 300 Kan. 875, 884, 335 P.3d 1162 (2014).

So we return to Dulaney's argument on appeal. The problem with Dulaney's approach is that he has failed to make even a foundational showing that his counsel had an active conflict of interest in representing him in this case. The only purported conflict was based on the communication problem between Dulaney and Angst. As Dulaney puts it in his brief, "Angst filed multiple motions to withdraw based on a very real communication problem, which can easily equate to a conflict of interest." But he

11

provides no authority to support his argument. The district court was able to question Angst about his ability to continue to represent Dulaney and believed that he could do so. Angst also believed that he remained able to represent Dulaney to the best of his ability, and the district court believed him. So we fail to see how the *Mickens* conflict of interest provisions apply at all to Dulaney's case.

But even if we were to assume that Angst had an active personal conflict of interest while representing Dulaney, Dulaney fails to establish prejudice or any actual adverse effect. In his brief, Dulaney argues that Angst's failure to raise and correct the illegal sentence issue, discussed above, at sentencing demonstrates a per se adverse effect. But Dulaney did not raise that argument below, and the district court did not have an opportunity to address it. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014).

And even if it was addressed, Dulaney has not appeared to have suffered any true adverse effect from the mistake regarding his sentencing. As addressed above, an illegal sentence can be corrected at any time. Because we follow the recommendation of Dulaney and the State to remand for resentencing, Dulaney has suffered no adverse effect from his illegal sentence. The sentence will be corrected before Dulaney is impacted by the incorrect sentence.

In conclusion, the record supports the district court's finding that Angst was not ineffective in his representation of Dulaney. Many of Dulaney's arguments boiled down to his assertions that Angst did not meet with him, failed to give him various documents, and did not perform in the manner Dulaney wished. But Angst controverted Dulaney's assertions, and the district court found Angst more credible. Appellate courts do not reweigh evidence, make credibility determinations, or resolve conflicts in evidence; instead, appellate courts give deference to the determinations made by the trial court. *White¸* 308 Kan. at 504. There was ample evidence to support Dulaney's convictions and

12

he fails to show how, absent any alleged ineffectiveness, the outcome of his case would have been different.

Convictions affirmed, sentence vacated, and case remanded for resentencing.