NOT DESIGNATED FOR PUBLICATION

No. 125,882

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LARRY L. MORGAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Submitted without oral argument. Opinion filed August 30, 2024. Sentence vacated and case remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and PICKERING, JJ.

PICKERING, J.: On appeal, Larry L. Morgan challenges the legality of his sentence. Prior to his sentencing, Morgan had asserted that several of his prior convictions from Iowa should have been scored as nonperson misdemeanors rather than person misdemeanors, and thus he should have a lower criminal history score. At sentencing, the State argued against Morgan's assertions but did not produce additional evidence in support of Morgan's out-of-state convictions. The district court denied Morgan's criminal history score objection. After reviewing the record, we vacate Morgan's sentence and remand for the district court to resentence him with his correct criminal history score.

1

In 2022, Morgan pleaded no contest to one charge of criminal threat for acts committed in October 2021. In the presentence investigation (PSI) report, Morgan's criminal history was scored as A. Seven of Morgan's prior convictions from Iowa were scored as person misdemeanors: four assault convictions (two committed in 2021, one committed in 2013, and one committed in 2012), two contempt convictions (committed in 2013), and one false imprisonment conviction (committed in 2013). Those convictions corresponded to entries 2, 9, 53, 54, 55, 57, and 64 in the PSI report. Entries 2 and 9 cited Iowa Code § 708.2 and described the convictions as "Serious Assault Causing Bodily Injury or Mental Illness." Entry 53 cited Iowa Code § 710.7 and described the conviction as "False Imprisonment." Entry 54 cited Iowa Code § 708.2A and described the conviction as "Domestic Assault Causing Injury." Entries 55 and 57 cited Iowa Code § 664A.7 and described the convictions as "Contempt—Violation of a No Contact Order or Protective Order." Entry 64 cited Iowa Code §§ 708.1 and 708.2 and described the conviction as "Assault Causing Bodily Injury." Entries 9, 53, 54, 55, 57, and 64 were converted to two person felonies pursuant to K.S.A. 21-6811(a).

The PSI report also listed five other Iowa assault convictions which were unscored. Entries 19 and 23 cited Iowa Code § 708.2 and described the convictions as "Assault." Entries 58, 59, and 60 cited Iowa Code § 708.1 and described the convictions as "Simple Assault."

Two weeks before sentencing, Morgan objected to entries 2, 9, 19, 23, 36, 49, 54, 55, 57, 58, 59, 60, 64, and 78 in the PSI report. He asserted that those entries should be reclassified as nonperson misdemeanors and that his criminal history score should be C. Morgan argued that Iowa Code § 708.1 applied to all of his assault convictions because Iowa Code § 708.2 was a penalty statute, rather than a criminal elements statute. He asserted that because the PSI report did not list a subsection for any of his convictions,

Iowa Code § 708.1 in its entirety had to be compared to K.S.A. 21-5412, Kansas' assault statute. Because Iowa Code § 708.1 is broader than Kansas' assault statute, Morgan argued that his Iowa convictions had no Kansas comparator and could not be scored as person misdemeanors.

The State filed a response to Morgan's objection to the PSI report. The State pointed out that Iowa Code § 708.2(2) classifies assault causing bodily injury or mental illness as a serious misdemeanor. The State contended that Iowa treats assault and battery as different degrees of the same crime. Thus, the State explained, Iowa Code § 708.2 applied to some of Morgan's assault convictions. The State also argued that while Iowa's assault statute is broader than Kansas', it was "clear that a number of the Defendant's Iowa convictions were for conduct prohibited under the subsections of the Iowa assault statute requiring bodily harm as an element." As a result, the State contended, the assault convictions in entries 2, 9, 54, and 64 were comparable to Kansas' battery statute.

As to the contempt convictions, the State asserted that the convictions in entries 55 and 57, charged under Iowa Code § 664A.7, were comparable to K.S.A. 2021 Supp. 21-5924. The State claimed that both statutes required a valid protective order in place and contact by the defendant with the protected party in violation of the order, the only difference being that Iowa required a higher level of intent to violate the order.

At the sentencing hearing on November 16, 2022, Morgan continued with his arguments against the proposed criminal history score. He argued that the State "used titles and inferences" to score his Iowa assault convictions. He also argued that the PSI report did not list subsections for Morgan's assault convictions and the Iowa assault statutes were broader than Kansas' assault statutes. Under Morgan's argument, his Iowa contempt convictions were not misdemeanors, explaining how the "Iowa offense makes it clear it's a contempt, not comparable to our misdemeanor violation of a protection order."

The State responded that the levels of assault which Morgan was convicted of were in the description sections in the PSI report. Discussing entries 2 and 9 in the PSI report, the State noted that Iowa Code § 708.2(2) describes assault under Iowa Code § 708.1 that causes bodily injury or mental illness as a serious misdemeanor, and the PSI report listed those assaults as bodily injury or mental illness. Thus, the district court could "pretty much infer that [Morgan's convictions fell] under subsection 2 of 708.2." The State also argued that because Morgan had convictions for contempt "of a court order for no contact . . . as opposed to regular contempt," those convictions should count in his criminal history.

During the hearing, the preparer of the PSI report informed the State that she had the journal entries of Morgan's assault convictions that listed the subsections for each conviction. The State did not know beforehand that it possessed the journal entries. The State did not introduce the journal entries as evidence.

The district court found Iowa Code § 708.1(2)(b) comparable to Kansas' assault statute. The district court stated that the Iowa statute "lists more things that could be bodily harm, but the bottom line is it would be . . . fear of physical contact" that "could cause painful, injurious, insulting or offensive harm, but it's the same as immediate bodily harm." Therefore, the court counted Morgan's assault convictions listed under Iowa Code § 708.2 as person misdemeanors.

The district court also counted Morgan's conviction for domestic assault under Iowa Code § 708.2A as a person misdemeanor. The court stated that Iowa's statute is "different than our statute, but it's expressly the same acts, an act which causes bodily injury, and we consider it battery, and they are calling it assault, causing bodily injury." Therefore, the court stated that it was "going to find that the same with domestic assault causing bodily injury, that those should all be scored."

The district court denied Morgan's objection to his criminal history and calculated his criminal history score as A. The court granted Morgan's motion for departure, sentencing Morgan to a 16-month underlying prison sentence but granting 12 months of probation. This appeal followed.

ANALYSIS

*We do not find this case moot.*

After this case was conferenced, we issued a show cause order, requesting both parties to advise if this case was moot. Specifically, we requested that the State advise us of Morgan's current custodial status and directed the parties to address why the appeal should not be dismissed as moot.

We review mootness questions de novo. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. McKnight*, 292 Kan. 776, 778, 257 P.3d 339 (2011). "Mootness occurs when circumstances, such as completing a sentence, would render a judicial decision ineffectual to a party's vital rights." *State v. Wilson*, 319 Kan. ___, 2024 WL 3543894, at *3. A case is determined to be moot "after *a clear and convincing showing* 'that the actual controversy has ended, that the only judgment that could be entered would be ineffectual for any purpose, and that it would not have an impact on any of the parties' rights.'" (Emphasis added.) *Wilson*, 319 Kan. at ___, 2024 WL 3543894, at *3.

From the parties' responses, it remains unclear whether Morgan has completed his sentence. As such, without a "clear and convincing showing" that the actual controversy has ended, and is thus moot, we render this judicial decision. *Wilson*, 319 Kan. at ___, 2024 WL 3543894, at *3.

*The State Failed to Meet Its Burden in Proving the Classifications of Morgan's Prior Convictions*

*Standard of Review*

"An appellate court reviews a district court's decision that the State met its burden to prove the classification of a prior conviction for substantial competent evidence." *State v. Corby*, 314 Kan. 794, 796, 502 P.3d 111 (2022). To the extent that statutory interpretation is required, our review is unlimited. If the statutory language is plain and unambiguous, we apply such language as written. *State v. Kerrigan*, 317 Kan. 683, 686, 538 P.3d 852 (2023).

*Analysis*

On appeal, Morgan argues that the State failed to meet its burden to prove the classifications of his Iowa assault and contempt convictions as person crimes. He specifically points to the State not submitting evidence that would confirm Morgan's criminal history score is correct. Morgan thus argues that he received an illegal sentence because it is impossible to determine whether his criminal history score is correct and his sentence is ambiguous as to whether he received the correct prison term.

A sentence is illegal when it (1) is imposed by a court without jurisdiction; (2) does not conform to the applicable statutory provisions, either in character or in term of punishment; or (3) is ambiguous about the time and manner in which the sentence is to be served. K.S.A. 22-3504(c)(1). Courts can correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 22-3504(a).

6

*How Kansas Classifies Out-of-State Misdemeanors*

Out-of-state crimes are classified as misdemeanors or felonies according to the convicting jurisdiction. K.S.A. 21-6811(e)(2). If the convicting jurisdiction classifies the offense as a misdemeanor, it is classified as a class A, B, or C misdemeanor based on the comparable Kansas offense. K.S.A. 21-6811(e)(2)(B). If Kansas does not have a comparable offense to an out-of-state misdemeanor, the out-of-state misdemeanor cannot be used to calculate the defendant's criminal history score. K.S.A. 21-6811(e)(2)(B).

Under K.S.A. 21-6811(e)(3)(A), out-of-state misdemeanors are classified as person or nonperson by referring to the comparable Kansas offense in effect on the date the current crime of conviction was committed. If there is no Kansas comparator, the out-of-state misdemeanor must be classified as nonperson. K.S.A. 21-6811(e)(3)(A).

For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018). In 2019, the Kansas Legislature added K.S.A. 21-6811(e)(3)(B) to clarify when a felony offense should be classified as a person or nonperson crime. Important to our analysis in this case, the Legislature did not amend the language in K.S.A. 2019 Supp. 21-6811(e)(3)(A) in determining whether a misdemeanor conviction should be classified as a person or nonperson crime. And thus, we proceed with analyzing the term "comparable" as defined in *Wetrich*. See *State v. Hasbrouck*, 62 Kan. App. 2d 50, 52, 506 P.3d 924 (2022) ("We must note that comparable Kansas offenses are still used in designating an out-of-state misdemeanor as a person or nonperson crime.").

K.S.A. 21-6814(a) provides two scenarios for determining criminal history. "In one, a defendant admits to criminal history. In the other, the court determines criminal

7

history by the preponderance of the evidence." *Corby*, 314 Kan. at 797. And K.S.A. 21-6814(b) provides that "except to the extent disputed . . . , the summary of the offender's criminal history . . . shall satisfy the state's burden of proof regarding an offender's criminal history." If a defendant, however, provides "written notice of any error" in the PSI report specifying "the exact nature of the alleged error[,]" the State must prove such disputed portion. K.S.A. 21-6814(c). And when the prior conviction "is an out-of-state offense with alternative means—some of which would not be comparable to Kansas person crimes—the State's burden is to establish that the defendant committed a version of the offense supporting the person classification." *State v. Obregon*, 309 Kan. 1267, 1275, 444 P.3d 331 (2019).

*Comparability of Morgan's Assault Convictions*

Before sentencing, Morgan filed a written objection to his criminal history, stating that several entries in the PSI report were improperly scored as person misdemeanors. Therefore, the State had the burden to prove that the classification of those convictions was correct. K.S.A. 21-6814(c).

As for his Iowa assault convictions, Morgan states that the PSI report is internally contradictory by listing some assault convictions as person misdemeanors but other assault convictions as unscored. Morgan also argues that because the PSI report does not list any subsections of the Iowa assault statutes, it is impossible to determine which assault elements he was convicted of. Because Iowa criminalizes assault committed in several ways, Morgan submits that it is impossible to determine whether his criminal history score is correct without identifying the elements of his convictions. And Morgan argues that while the State claimed that his assault convictions were comparable to Kansas battery, Iowa's assault statutes are broader than Kansas' battery statute.

8

The State responds that because any subsection of Iowa's assault offense is comparable to a Kansas assault or battery, any error in failing to specify the subsections of Morgan's assault convictions is harmless. The State also counters that one can reasonably infer that Morgan was convicted of assault under Iowa Code § 708.2(2). Thus, the State argues that the conduct for which Morgan was convicted also falls under either assault or battery in Kansas.

As previously noted, the PSI report listed convictions under Iowa Code § 708.1 and § 708.2 from 2012 and 2021, as well as a conviction under Iowa Code § 708.2A from 2013. In 2012, Iowa defined assault as follows:

> "1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> "2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
> "3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another." Iowa Code § 708.1 (2011).

In 2013, Iowa Code § 708.1 was amended slightly but defined assault as the same acts defined above. Effective June 17, 2021, Iowa amended Iowa Code § 708.1 to include in the definition of assault, in addition to the acts defined above, "[i]ntentionally points a laser emitting a visible light beam at another person with the intent to cause pain or injury to another." Iowa Code § 708.1(d)(1) (2021).

Iowa Code § 708.2 (2011) defines penalties for assault:

> "1. A person who commits an assault, as defined in section 708.1, with the intent to inflict a serious injury upon another, is guilty of an aggravated misdemeanor.

9

"2. A person who commits an assault, as defined in section 708.1, and who causes bodily injury or mental illness, is guilty of a serious misdemeanor.

"3. A person who commits an assault, as defined in section 708.1, and uses or displays a dangerous weapon in connection with the assault, is guilty of an aggravated misdemeanor. This subsection does not apply if section 708.6 or 708.8 applies.

"4. A person who commits an assault, as defined in section 708.1, without the intent to inflict serious injury, but who causes serious injury, is guilty of a class 'D' felony.

"5. A person who commits an assault, as defined in section 708.1, and who uses any object to penetrate the genitalia or anus of another person, is guilty of a class 'C' felony.

"6. Any other assault, except as otherwise provided, is a simple misdemeanor."

The above penalties for assault remained in effect under Iowa Code § 708.2 (2013) and (2021).

Iowa Code § 708.2A(1) (2013) defines domestic abuse assault as "an assault, as defined in section 708.1, which is domestic abuse as defined in section 236.2." In relevant part, Iowa Code § 236.2 (2013) defines domestic abuse as "assault as defined in section 708.1" when the assault is between persons of certain relationships. Iowa Code § 236.2(2)(a)-(d) (2013).

Because Morgan committed his current crime of conviction in October 2021, we compare the Iowa statutes to the Kansas statutes in effect at that time. See K.S.A. 2021 Supp. 21-6811(e)(2)(B). Kansas defines assault as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2021 Supp. 21-5412(a). Kansas defines battery as "(1) [k]nowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2021 Supp. 21-5413(a).

Comparing Iowa's assault statutes first to Kansas battery under K.S.A. 2021 Supp. 21-5413, certain sections of Iowa's statutes criminalize conduct that does not require physical contact or actual bodily harm. For example, none of the acts defined in any relevant version of Iowa Code § 708.1 require bodily harm or physical contact. See Iowa Code § 708.1(2)(a)-(d)(1) (2021); Iowa Code § 708.1(1)-(3) (2011). Further, each of the preceding versions of Iowa Code § 708.2(1) penalizes assault "with the intent to inflict a serious injury upon another." Thus, each relevant version of both Iowa Code § 708.1 and § 708.2 contain subsections which do not require bodily harm or physical contact, whereas K.S.A. 2021 Supp. 21-5413 requires bodily harm or physical contact to constitute a battery. Accordingly, read in their entirety, each version of Iowa Code § 708.1 and § 708.2 are both broader than K.S.A. 2021 Supp. 21-5413.

Moreover, because domestic abuse assault under Iowa Code § 708.2A (2013) is defined as an assault under Iowa Code § 708.1 (2013) that is between persons of certain relationships, Iowa Code § 708.2A is also broader than K.S.A. 2021 Supp. 21-5413. Because it is unclear under which subsections Morgan was convicted, it is unclear whether Morgan's assault convictions were comparable to battery under K.S.A. 2021 Supp. 21-5413.

To date, Kansas courts have not examined the comparability of Iowa's and Kansas' assault statutes. That said, the plain language of the statutes shows that the Kansas assault statute, K.S.A. 2021 Supp. 21-5412(a), requires a "reasonable apprehension of immediate bodily harm," whereas certain sections of Iowa's assault statute do not have such a requirement. Iowa Code § 708.1 (2)(c)-(d)(1) criminalizes intentionally pointing a firearm at another person, as well as intentionally pointing a laser at another person with intent to inflict injury or pain. Neither of those acts requires a person to place another in fear of any harm or contact. Because Iowa Code § 708.1(3) (2011) also criminalizes intentionally pointing a firearm at another person, that version of the statute also contains a section not requiring fear of any harm or contact.

11

In *State v. Rodriguez*, No. 117,297, 2018 WL 1973455, at *8 (Kan. App. 2018) (unpublished opinion), another panel of this court compared a New Jersey assault statute to Kansas' assault statute. There, the panel recognized that Kansas' assault statute was narrower than New Jersey's assault definition where New Jersey did not require a person to place another in "immediate apprehension of bodily harm." 2018 WL 1973455, at *8. Similarly, each relevant version of Iowa's statute contains sections which do not require a fear of immediate bodily harm. See Iowa Code § 708.1(2)(c)-(d)(1) (2021); Iowa Code § 708.1(3) (2011). Those sections are broader than K.S.A. 2021 Supp. 21-5412. Furthermore, because both Iowa Code § 708.2 and § 708.2A require an assault as defined in Iowa Code § 708.1, those statutes are broader than K.S.A. 2021 Supp. 21-5412 as well, depending under which subsection a person is convicted.

Kansas' assault statute requires a "reasonable apprehension of immediate bodily harm." K.S.A. 2021 Supp. 21-5412(a). Yet each relevant version of Iowa's assault statute criminalizes acts intended to "place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive." See Iowa Code § 708.1(2)(b) (2021); Iowa Code § 708.1(2) (2011). Moreover, Iowa's statute also criminalizes "[a]ny act . . . intended to cause pain or injury" or "intended to result in physical contact which will be insulting or offensive." See Iowa Code § 708.1(2)(a) (2021); Iowa Code § 708.1(1) (2011). Thus, where Kansas requires the threat of "immediate bodily harm," Iowa's statute encompasses the threat of "insulting or offensive" contact, as distinct from the threat of "painful or injurious" contact. See K.S.A. 2021 Supp. 21-5412(a); Iowa Code § 708.1(2)(a)-(b) (2021); Iowa Code § 708.1(1)-(2) (2011). As a result, Iowa criminalizes placing another person in fear of broader categories of contact than Kansas does.

Because a conviction under Iowa Code § 708.2 and §708.2A requires an assault under Iowa Code § 708.1, a person may violate Iowa's assault statutes without having taken any action that would violate Kansas' assault statute. Thus, as to Morgan's

convictions under Iowa Code § 708.1, § 708.2, and § 708.2A, it would be necessary to determine under which subsection Morgan was convicted to determine his correct criminal history score.

Absent evidence that Morgan was convicted under a specific subsection of Iowa's statutes that is comparable to Kansas' statutes, the State failed to carry its burden to prove the Iowa assault statutes under which Morgan was convicted were comparable to Kansas' statutes. If the State failed to carry its burden, the district court should not have scored these convictions as person misdemeanors. See K.S.A. 2021 Supp. 21-6811(e)(3)(A).

*Comparability of Morgan's Contempt Convictions*

As for his Iowa contempt convictions, Morgan again argues that it is impossible to determine which elements he was convicted of. Separate subsections of Iowa Code § 664A.7 classify contempt as either a simple misdemeanor or summary contempt. He also argues that because Iowa Code § 664A.7 is not located in Iowa's criminal statutes, it is questionable whether he was convicted of a crime.

The State counters that Morgan's Iowa contempt convictions are comparable to Kansas' violation of a protective order statute, K.S.A. 2021 Supp. 21-5924. As for Iowa's statute not being located within its criminal statutes, the State asserts that the contempt convictions were criminal convictions. The State notes that Kansas has crimes which are not located within its criminal statutes, such as driving under the influence. See K.S.A. 8-1567.

As previously noted, the PSI report listed two convictions under Iowa Code § 664A.7 from 2013. Iowa Code § 664A.7 (2013) outlines punishments for violating a no-contact order or protective order. The statute "applies to no-contact orders issued for violations . . . of sections 708.2A [domestic abuse assault], 708.7 [harassment], 708.11

13

[stalking], 709.2 [first-degree sexual abuse], 709.3 [second-degree sexual abuse], and 709.4 [third-degree sexual abuse], and any other public offense for which there is a victim." Iowa Code § 664A.2(1) (2013). The statute also applies to protective orders "issued pursuant to chapter 232 [juvenile proceedings], 236 [domestic abuse], 598 [dissolution of marriage and domestic relations], or 915 [victim rights]." Iowa Code § 664A.2(2) (2013).

Iowa provides two methods of enforcement for violations of no-contact or protective orders. In one method, "the court may hold a person in contempt of court." Iowa Code § 664A.7(5) (2013). In the other method, a violation "constitutes a public offense and is punishable as a simple misdemeanor." Iowa Code § 664A.7(5) (2013).

In Iowa, when the court holds a person in contempt, the person must have violated the no-contact or protective order willfully. Willful disobedience is "'conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.'" *Den Hartog v. City of Waterloo*, 891 N.W.2d 430, 436 (Iowa 2017). The prosecution need not show a willful violation if the violation is charged as a misdemeanor. Accordingly, sufficient evidence can support a misdemeanor no-contact order violation conviction despite the possibility that the person "might reasonably have believed that [his or her spouse] was successful in having the no-contact order lifted." *State v. Moeller*, 589 N.W.2d 53, 54-55 (Iowa 1999).

*Kansas' Violations of a Protective Order*

K.S.A. 2021 Supp. 21-5924(a) defines violations of a protective order:

"(a) Violation of a protective order is knowingly violating:

14

(1) A protection from abuse order issued pursuant to K.S.A. 60-3105, 60-3106 or 60-3107, and amendments thereto;

(2) a protective order issued by a court or tribunal of any state or Indian tribe that is consistent with the provisions of 18 U.S.C. § 2265, and amendments thereto;

(3) a restraining order issued pursuant to K.S.A. 2021 Supp. 23-2707 [dissolution of marriage], 38-2243 [child custody proceedings], 38-2244 [informal supervision proceedings] or 38-2255 [child custody disposition proceedings], and amendments thereto, or K.S.A. 60-1607, prior to its transfer;

(4) an order issued in this or any other state as a condition of pretrial release, diversion, probation, suspended sentence, postrelease supervision or at any other time during the criminal case that orders the person to refrain from having any direct or indirect contact with another person;

(5) an order issued in this or any other state as a condition of release after conviction or as a condition of a supersedeas bond pending disposition of an appeal, that orders the person to refrain from having any direct or indirect contact with another person; or

(6) a protection from stalking, sexual assault or human trafficking order issued pursuant to K.S.A. 60-31a05 or 60-31a06, and amendments thereto."

"Violation of a protective order is a class A person misdemeanor." K.S.A. 2021 Supp. 21-5924(b)(1).

In Kansas, a person acts "'knowingly'" regarding the nature of or the circumstances around his or her conduct "when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 2021 Supp. 21-5202(i). A person acts "'knowingly'" regarding the result of his or her conduct "when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2021 Supp. 21-5202(i).

As noted above, Iowa's willfulness standard includes conduct that is "wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Den Hartog*, 891 N.W.2d

15

at 436. Such conduct is more in line with Kansas' definition of recklessness. Recklessness in Kansas is when a "person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2021 Supp. 21-5202(j).

In *In re Johnson*, No. 15-0416, 2015 WL 8367675, at *1 (Iowa Ct. App. 2015) (unpublished opinion), an Iowa appellate court affirmed a district court's finding that a person did not intentionally violate a court order "with an evil motive or in reckless disregard of [respondent's] rights." Thus, contempt under Iowa Code § 664A.7 (2013) encompasses conduct which would be reckless in Kansas.

### Kansas' Different Levels of Criminal Intent

Kansas defines the levels of criminal intent, "from highest to lowest, as follows: (1) Intentionally; (2) knowingly; (3) recklessly." K.S.A. 2021 Supp. 21-5202(b). This hierarchy of intent is reaffirmed by K.S.A. 2021 Supp. 21-5202(c), which states:

> "(c) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."

Furthermore, Iowa does not require willful conduct if Iowa Code § 664A.7 is prosecuted as a misdemeanor. *Moeller*, 589 N.W.2d at 54-55. Thus, because a violation of Iowa Code § 664A.7 (2013) requires a lower level of intent—no matter how it is prosecuted—than K.S.A. 2021 Supp. 21-5924, Iowa's statute is broader and not comparable to Kansas' statute. Therefore, Morgan's convictions under this statute should not have been included in his criminal history. See K.S.A. 21-6811(e)(2)(B).

16

*Morgan's Prior Convictions Were Not Supported by Substantial Competent Evidence*

The State's burden was to prove that Morgan committed each disputed conviction in a way which was comparable to a Kansas person crime. Here, during the sentencing hearing, the State presented no evidence of Morgan's Iowa convictions outside of the PSI report (which is required at all defendants' sentencing hearings). Although the State had the journal entries of Morgan's Iowa assault convictions available, the State did not move to add them to the record. Therefore, the only evidence of Morgan's prior convictions was the PSI report.

As discussed above, the statutes to which Morgan's convictions are cited are divisible with alternative means for violations, some of which are not comparable to Kansas person offenses. Our Supreme Court has held that when an out-of-state conviction was the result of a divisible statute, i.e., one comprising multiple, alternative versions of the crime—*without viewing something more*—a sentencing court cannot determine whether the conviction arose under a particular alternative. *Obregon*, 309 Kan. at 1274.

In *Obregon*, our Supreme Court examined a challenge to Obregon's criminal history score where the PSI report was the only evidence of a conviction under a divisible Florida statute. Although Obregon did not object to his criminal history score, the PSI report did not list which subsection of a divisible Florida statute he had been convicted of. One subsection of the Florida statute was broader than Kansas' statute. The court acknowledged that the PSI report usually satisfies the State's burden absent an objection but noted that "more is required when the summary does not indicate which version of the out-of-state offense the defendant committed." 309 Kan. at 1275. Because the Florida statute was facially broader than Kansas', the court concluded the Florida conviction should not have been scored as a person crime "without supporting evidence." 309 Kan.

1275. The *Obregon* court remanded for resentencing after determining the proper classification of Obregon's crimes. 309 Kan. 1275-76.

Here, Morgan objected to his criminal history score, and the State failed to produce any additional evidence in response. The State argued that certain designations or descriptions in the PSI report were enough despite the objections to the PSI report. Furthermore, similar to *Obregon*, Morgan brings his criminal history challenge regarding prior convictions under divisible statutes. Thus, under K.S.A. 2021 Supp. 21-6814(c), the State was required to show more to prove Morgan's criminal history. Failing to produce such evidence, the district court's conclusion that the State met its burden to prove Morgan's criminal history score was not supported by substantial competent evidence.

*Proceedings on Remand*

Morgan asks us to remand this case for resentencing under a criminal history score of C, which is the score that would apply if all of Morgan's Iowa convictions at issue were scored as nonperson misdemeanors. He submits that, on remand, the State should not be permitted to add the journal entries of his Iowa convictions as evidence for two reasons. First, he argues that because he objected to his criminal history score at the district court, K.S.A. 21-6814(d)—which allows the State to add journal entries of prior convictions—is inapplicable. Second, he argues that, under K.S.A. 21-6814(c), the time for the State to meet its burden was at the sentencing hearing and res judicata, therefore, bars the State from attempting to meet its burden on appeal or on remand.

The State responds that the proper remedy is to remand for the district court to establish a sufficient record on Morgan's Iowa convictions. The State contends that the journal entries of Morgan's convictions were and remain available, but the district court found them unnecessary after hearing arguments at the sentencing hearing. Yet the production of additional evidence was a burden that remained with the State. Under K.S.A. 21-6814(c): "The state shall have the burden of proving the disputed portion of

18

the offender's criminal history." The State further argues that if the case were remanded and Morgan were sentenced under a criminal history score of C, the State could file its own motion to correct an illegal sentence. The State counters that Morgan's argument asks us to use res judicata to impose an illegal sentence.

Morgan is correct that K.S.A. 21-6814(d) does not apply. The statute provides that if a defendant challenges his or her criminal history—*for the first time on appeal*—then the defendant has the burden to prove prejudicial error. K.S.A. 21-6814(d). Both the defendant and the State can provide journal entries of the prior convictions at issue to show prejudicial error, or lack thereof. K.S.A. 21-6814(d). "The [appellate] court may remand the case if there is a reasonable question as to whether prejudicial error exists." K.S.A. 21-6814(d). Because these provisions apply only when the defendant raises his or her criminal history for the first time on appeal, the statute does not apply here.

In cases where the defendant objected to the criminal history at the district court and the State had produced evidence at the original sentencing hearing, other panels of this court have concluded that the prior convictions at issue could not be included in the criminal history on remand. Those cases relate to the unconstitutionality of reckless criminal threat and whether intentional criminal threat was proved. There, the panels vacated the sentences and remanded for resentencing without including the convictions at issue in the criminal history. See *State v. Harrington*, No. 125,022, 2023 WL 9016151, at *13-14 (Kan. App. 2023) (unpublished opinion), *petition for rev. filed* January 29, 2024; *State v. Howell*, No. 124,650, 2022 WL 4003626, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 316 Kan. 761 (2022); *State v. Martinez-Guerrero*, No. 123,447, 2022 WL 68543, at *6-7 (Kan. App. 2022) (unpublished opinion).

Here, the State failed to provide sufficient evidence establishing Morgan's criminal history. In *State v. Young*, No. 86,927, 2002 WL 35657594 (Kan. App. 2002) (unpublished opinion), Young challenged prior juvenile convictions included in his

criminal history score on the ground that they should have decayed when he reached 25. The State argued that the PSI report designation of the convictions as "'CR'" was enough to show they were adult convictions. Young appealed, acknowledging that his criminal history score would remain unchanged because of his other convictions but "raise[d] the issue to prevent the convictions from being used against him in the future." 2002 WL 35657594, at *4. The panel concluded that the State failed to meet its requirement to produce supporting evidence and the district court erred in including the alleged juvenile convictions in Young's criminal history score. The panel remanded the case for correction of Young's criminal history. 2002 WL 35657594, at *5.

The *Harrington* panel reached the same conclusion after finding that the plea transcript relied upon by the State at the sentencing hearing could not establish which version of criminal threat Harrington was convicted of. The panel stated that because the record did not indicate whether Harrington was convicted of intentional or reckless criminal threat, "the conviction should not have been included in his criminal history score" and remanded "for resentencing based on the correct criminal history score." 2023 WL 9016151, at *13.

State v. Dailey *Is Instructive.*

Our Supreme Court's decision in *State v. Dailey*, 314 Kan. 276, 497 P.3d 1153 (2021), is instructive here. There, the parties agreed that the State failed to produce sufficient evidence to support the district court's order of restitution. The State maintained that the case should be remanded for a new evidentiary hearing, whereas Dailey argued that there should not be a new hearing. Our Supreme Court sided with Dailey, noting that the State "had its chance to support the restitution request; if it failed, then it failed." 314 Kan. at 278-79. The court remanded for a new restitution order supported by the existing record. 314 Kan. at 279.

20

Because Morgan objected before sentencing, the State had the opportunity—and the obligation under K.S.A. 21-6814(c)—to produce additional evidence of the disputed portion of the PSI report. Caselaw demonstrates that when the State has failed to meet its obligation under K.S.A. 21-6814(c), the State is held to the existing record on remand. See *Dailey*, 314 Kan. at 279. There is no clear distinction in the statute or in caselaw which would allow the State a second chance to present evidence just because there was no evidence presented at the original sentencing hearing. Therefore, we remand the case for Morgan to be resentenced under a corrected criminal history score according to the existing record.

Sentence vacated and case remanded for resentencing.