NOT DESIGNATED FOR PUBLICATION

No. 127,803

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAUN MICHAEL PELHAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; RICHARD MARQUEZ, judge. Submitted without oral argument. Opinion filed February 20, 2026. Vacated and remanded with directions.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Nicholas C. Vrana*, deputy county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Defendant Shaun Pelham asks us to vacate the Finney County District Court's imposition of lifetime postrelease supervision on him because he did not waive his right to have a jury decide that he was more than 18 years old when he committed two counts of aggravated indecent liberties with a child. Consistent with the weight of authority, we consider this challenge for the first time on appeal and find it to be meritorious. Again, consistent with controlling authority, we set aside the order for lifetime postrelease supervision and remand to the district court with directions to impose a term of 60 months postrelease supervision.

1

Pelham pleaded no contest to the two sex crimes, severity level 3 person felonies violating K.S.A. 21-5506(b)(1), he committed about four years ago The district court ordered Pelham to serve 59 months in prison on each count to be served consecutively for a controlling term of 118 months, reflecting a presumptive guidelines sentence given his lack of scoreable criminal history. The district court also placed Pelham on lifetime postrelease supervision because he was 43 years old when he committed the crimes. See K.S.A. 22-3717(d)(1)(G). On appeal, Pelham challenges only the district court's imposition of lifetime postrelease supervision. Given the narrow issue before us, we dispense with any discussion of the underlying facts or the 118-month prison term.

We frame the legal issue and then consider both preservation—Pelham has raised his jury-trial waiver argument for the first time on appeal—and the merits of the claim.

Postrelease supervision is a component of a criminal defendant's sentence. K.S.A. 21-6804(e)(2)(C); *State v. Nunez*, 319 Kan. 351, 355, 554 P.3d 656 (2024). For statutorily designated sex crimes, including aggravated indecent liberties with a child, the prescribed term of postrelease supervision is life if the defendant was at least 18 years old when they committed the crime. If the defendant was younger than 18 years old, they are subject to postrelease supervision for 60 months. K.S.A. 22-3717(d)(1)(G). Given that statutory scheme, the defendant's age is a fact that may increase their term of postrelease supervision and, thus, their sentence above the 60-month period. *Nunez*, 319 Kan. at 355.

Defendants have a right under the Sixth Amendment to the United States Constitution to have a jury determine such a sentence enhancing fact unless they otherwise admit that fact during the disposition of the charges against them. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (any fact other than earlier conviction elevating criminal defendant's sentence above statutory maximum punishment must be submitted to jury and proved beyond a reasonable doubt); see *Blakely v. Washington*, 542 U.S. 296, 310, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)

2

("When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding."). The Court has since extended the rule in *Apprendi* to those facts that would increase a mandatory minimum sentence. *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The Kansas appellate courts have repeatedly acknowledged those principles. See *Nunez*, 319 Kan. at 355; *State v. Duncan*, 291 Kan. 467, 471-72, 243 P.3d 338 (2010), *overruled on other grounds by State v. Johnson*, 317 Kan. 458, 531 P.3d 1208 (2023).

In *Duncan*, the court recognized that a criminal defendant may waive their right to have a jury determine a sentence enhancing fact, thereby allowing the district court to make the finding before imposing punishment. But the waiver must be an informed one, meaning the district court must advise the defendant they have a right to a jury determination of the particular fact increasing their sentence. 291 Kan. at 472-73. A defendant's generic or general waiver of their right to a jury trial to determine their guilt is insufficient. 291 Kan. at 473. Although *Nunez* does not mention *Duncan*, its rationale reflects the need for a specific rather than general jury trial waiver of a fact that will enhance a defendant's sentence. 319 Kan. at 354 (quoting with favor *State v. Dettman*, 719 N.W.2d 644, 652 [Minn. 2006] ["'[A] defendant's admission of a fact supporting an upward sentencing departure [must] be accompanied by a knowing waiver of his right to a jury finding on that fact before the admission may be used to enhance his sentence.'"]); see *State v. Contreras*, 66 Kan. App. 2d 182, 189, 579 P.3d 1278 (2025) ("The holding in *Nunez* teaches us this: Before a district court sentences a defendant to lifetime postrelease supervision for the conviction of a sexually violent crime, it should obtain a jury finding that the defendant was at least 18 years old when they committed the crime or, in the case of a plea, it should obtain a knowing and voluntary jury trial waiver that includes informing the defendant they are waiving the right to a jury finding on their age."). [1]

3

[1] In *Duncan*, the district court considered a fact that would support an upward durational departure increasing Duncan's term of imprisonment as a component of his sentence rather than his period of postrelease supervision. 291 Kan. at 468-69. There is no legal difference between a fact used to increase a prison term and one used to extend postrelease supervision. Each increases the defendant's sentence and triggers jury trial rights protected in *Apprendi* and the later cases applying *Apprendi*.

In sum, a district court must navigate two steps to impose lifetime postrelease supervision on a defendant convicted of a covered sex crime under K.S.A. 22-3717(d)(1)(G). First, the district court must inform the defendant of their right to have a jury determine their age at the time they committed the crime and secure a waiver of that specific right. Second, assuming a defendant waives their jury trial right, the district court must obtain an admission from the defendant of their age or otherwise make a finding of their age supported in the record. Both steps are legally necessary to impose lifetime postrelease supervision. *Contreras*, 66 Kan. App. 2d at 189. An admission or other proof of age without a specific jury trial waiver is legally inadequate.

Here, Pelham rests his appeal solely on the absence of a sufficient jury trial waiver. Before turning to that issue, we consider whether Pelham has properly raised the issue for the first time on appeal.

Appellate courts typically do not consider issues initially raised on appeal. The constraint, however, is a prudential one rather than a jurisdictional bar. *State v. Rizo*, 304 Kan. 974, Syl. ¶ 1, 377 P.3d 419 (2016). In weighing that prudential option, we consider whether: (1) the claim presents a question of law resting on undisputed facts that would be dispositive of the case; (2) consideration would serve the ends of justice or advance a fundamental right; or (3) the district court was right for the wrong reason. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Pelham's challenge does not involve disputed facts and would dispose of the appeal and the only open issue in his criminal case. Likewise, the challenge entails his constitutionally protected right to jury trial. We find those considerations sufficient to take up the point.

4

Other courts considering challenges to postrelease supervision under K.S.A. 22-3717(d)(1)(G) initially raised on appeal have come to the same conclusion. See, e.g., *Contreras*, 66 Kan. App. 2d at 185; *State v. Conkling*, 63 Kan. App. 2d 841, 843, 540 P.3d 414 (Kan. App. 2023); *State v. Kewish*, No. 121,793, 2021 WL 4352531, at *2 (Kan. App. 2021); *State v. Schmeal*, No. 121,221, 2020 WL 3885631, at *8 (Kan. App. 2020) (unpublished opinion). But that view is not universal. Panels of our court declined to exercise their prudential authority in *State v. Jelinek*, 66 Kan. App. 2d 158, 163, 577 P.3d 662 (2025), and *State v. Skidmore*, No. 127,668, 2025 WL 2682404, at *3-4 (Kan. App. 2025) (unpublished opinion). The courts in *Nunez* and *Duncan* considered the lack of a sufficient jury trial waiver for the first time on appeal but did not directly address preservation.

Requiring lawyers for criminal defendants to object to insufficient jury trial waivers in the district court would compromise their professional duty as advocates for their clients. And it would essentially eliminate appeals such as this one. Assuming a defense lawyer were required to speak up, the district court presumably would recast a deficient waiver, thereby precluding any appeal. The ultimate obligation to obtain a sufficient waiver rests with the district court, and the check on that obligation falls to the prosecutor, as the State's representative in the adversarial process upon which the judicial system rests. Moreover, it's not as if what's required here is some recently unveiled secret. Just over 15 years ago, *Duncan* clearly outlined the specific jury trial waiver required to comport with *Apprendi* and a criminal defendant's Sixth Amendment rights.

In discussing the role of an appointed lawyer for a criminal defendant on a motion for habeas corpus relief under K.S.A. 60-1507, the Kansas Supreme Court recognized that "[c]ounsel is simply not free to act merely as an objective assistant to the [district] court or to argue against his or her client's position." *Robertson v. State*, 288 Kan. 217, 229, 201 P.3d 691 (2009). In some circumstances, that duty may require the lawyer to "stand silent." 288 Kan. at 229. For example, in the context of a criminal defendant's

5

statutory speedy trial rights, their lawyer has no obligation to point out that the district court has scheduled the trial beyond the mandated deadline and mere acceptance of the proposed date does not waive the defendant's rights. *State v. Queen*, 313 Kan. 12, 25, 482 P.3d 1117 (2021). In *Queen*, the court declined to credit the State's argument that the defense lawyer had an affirmative obligation to immediately call the speedy trial problem to the district court's attention. 313 Kan. at 25. The defense lawyer did raise the speedy trial violation in the district court after the statutory time had run. But the lawyer was not required to raise the issue at a time or in a manner that would have compromised his client's rights. In that sense, we find the circumstance here to be analogous. And we find the admonition on a lawyer's duty in *Robertson* weighs in favor of taking up Pelham's contention.[2]

[2] The circumstance here is unlike a criminal defense lawyer's obligation to lodge a contemporaneous objection to trial evidence to preserve the point for appeal. See *State v. Sinnard*, 318 Kan. 261, 283, 543 P.3d 525 (2024) (stating contemporaneous objection rule). There, the defense lawyer is (or should be) trying to exclude testimony or exhibits *disadvantaging* their client and must take affirmative steps in the district court to do so. But consistent with *Robertson*, the lawyer typically would have no duty to object to an erroneous action of the district court *advantaging* their client. Likewise, a failure to object alone commonly would not create an invited error. See *State v. Logsdon*, 304 Kan. 3, 31, 371 P.3d 836 (2016); *State v. Dern*, 303 Kan. 384, Syl. ¶ 4, 362 P.3d 566 (2015).

Having found Pelham's point appropriately presented for appellate review, we turn to the merits and add to the sparse procedural history we have provided. Pelham signed a plea agreement and acknowledgment of rights that included a general jury trial waiver. At the plea hearing, the district court informed Pelham he had a right to trial by 12 jurors who would determine his guilt or innocence. But the district court neither obtained a waiver of that right from Pelham nor informed him, let alone secured a waiver, of his right to have a jury determine his age for purposes of determining the appropriate period of postrelease supervision. In short, the district court failed to comply with *Duncan* and, therefore, erred in sentencing Pelham to lifetime postrelease supervision. (The Kansas

Supreme Court had yet to decide *Nunez* when Pelham entered his pleas or when the district court sentenced him.)

We next consider harmlessness. In *Nunez*, the court applied the harmlessness standard applicable when an element of the charged crime has been omitted from the instructions given the jurors. 319 Kan. at 356. In that case, Williams Nunez was convicted of rape based on the jury's guilty verdict rather than on a plea to the charged crime. And the jury made no determination as to his age. The district court found Nunez was more than 18 years old and imposed lifetime postrelease supervision without securing a proper jury trial waiver. On appeal, the court asked whether it was convinced beyond a reasonable doubt the result would have been the same absent the error and considered whether Nunez' age had been uncontested during the trial and supported by overwhelming evidence. 319 Kan. at 356 (citing *State v. Brown*, 298 Kan. 1040, 1049, 318 P.3d 1005 [2014]); see *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (omission of element harmless if element supported by "overwhelming evidence" and "uncontested" at trial). The court functionally looked at whether the jurors clearly would have found Nunez to be over 18 years old based on the evidence submitted during the trial. The court considered the evidence of Nunez' age lacking, determined the error to be prejudicial, and vacated the imposition of lifetime postrelease supervision. 319 Kan. at 356-57.

But, as our court recognized in *Contreras*, that test for harmlessness is inapposite when a defendant has been convicted based on their plea rather than a jury verdict. 66 Kan. App. 2d at 190-91. The State bears the burden of establishing the error to have been harmless beyond a reasonable doubt. We are unpersuaded that the State has met that high standard. We have no way of knowing—apart from speculation—whether Pelham would have exercised or waived his right to have a jury determine his age or what effect that might have had on the negotiated plea. Moreover, as we discuss next, the remedy afforded defendants in *State v. Obregon*, 309 Kan. 1267, 1277-78, 444 P.3d 331 (2019),

7

effectively precludes a finding of harmlessness. See slip op. at 9, n.3 (failure to secure jury trial waiver of fact enhancing sentence other than aggravating factor supporting upward durational departure cannot be corrected after defendant enters plea and district court finds them guilty).

So we turn to the matter of remedy. We find *Obregon* to be controlling. In that case, Christopher Obregon pleaded no contest to two drug felonies. Under K.S.A. 21-6805(g)(1), a defendant faced six months in prison in addition to their guidelines sentence if they possessed a firearm during the commission of a drug offense. Obregon was never informed and never waived his right to have a jury determine that sentencing enhancement—whether he had a gun. And the district court imposed the enhancement upon its own finding in violation of *Apprendi*.

On appeal, the court vacated the enhancement and held that on remand the district court could not empanel a jury to determine whether Obregon possessed a firearm when he committed the drug crimes because the jury's decision would amount to an impermissible special verdict. 309 Kan. at 1277-78. And the court pointed out the lack of a statutory mechanism for convening a jury to consider only the enhancement. 309 Kan. at 1278. The court directed that Obregon be resentenced without applying the statutory enhancement. 309 Kan. at 1278.

We see no meaningful distinction between *Obregon* and Pelham's circumstance. Both defendants faced sentencing enhancements and were not informed of their right to have a jury decide the operative fact triggering the increased punishment before being convicted on pleas. As we have said, there is no basis to distinguish an enhancement of a prison term from an enhancement of a period of postrelease supervision. Similarly, there is no statutory authority for empaneling a jury to determine a fact that would increase a period of postrelease supervision. See K.S.A. 21-6817(b) (outlining procedure for having jury determine aggravating factors supporting upward durational departure increasing

8

presumptive guidelines sentence); see also K.S.A. 21-6803(i) ("durational departure" entails deviation from presumptive term of imprisonment).

Consistent with *Obregon*, the remedy here requires that we vacate the period of postrelease supervision, and remand with directions to the district court to impose the 60-month period mandated in K.S.A. 22-3717(d)(1)(G)(ii). See *Nunez*, 319 Kan. at 357; *Contreras*, 66 Kan. App. 2d at 191-92.[3]

[3] The State relies, in part, on *State v. Duckworth*, No. 126,677, 2024 WL 4579265 (Kan. App. 2024) (unpublished opinion), as a workaround on remedy. There, the panel likened the failure to secure a specific jury trial waiver as to the defendant's age during a plea hearing to the submission of stipulated facts in a jury trial bearing on the elements of a charged crime. The panel reasoned that the failure to obtain the waiver should be treated as harmless if the defendant would not have been able to meaningfully contest his age in a jury trial. 2024 WL 4579265, at *5-6. But *Duckworth* does not mention, let alone consider, *Obregon*. In *Obregon*, the court effectively held there is no mechanism to correct the failure to secure a specific jury trial waiver of a fact triggering a statutory sentencing enhancement (apart from an upward durational departure increasing the presumptive guidelines term of imprisonment) after the district court has accepted a defendant's plea and adjudged them guilty. The relief must be a remand for resentencing without the enhancement. The error, therefore, cannot be dismissed as harmless.

Lifetime postrelease supervision is vacated, and the case is remanded to the district court with directions to impose a 60-month term of postrelease supervision.

Vacated and remanded with directions.

* * *

BRUNS, J.: I respectfully dissent from the majority's exercise of its discretion to address this issue for the first time on appeal. As the majority notes, in *State v. Jelinek*, 66 Kan. App. 2d 158, 163, 577 P.3d 662 (2025), a panel of our court declined to review a similar—if not identical—issue as the one presented here. In *Jelinek*, the panel explained:

"Appellate courts are designed to review decisions made by the trial courts, not to serve as forums for introducing new arguments or evidence. This principle ensures that trial courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party.

"We elect not to consider Jelinek's newly minted appellate challenge to his sentence. Although we are under no obligation to provide a reason for our finding, the burden to convince us we should hear his new claim is on Jelinek. Yet he presents no explanation regarding his failure to raise this issue before the district court except to acknowledge that he failed to do so. If the failure was due to his attorney's failure to inform him of a constitutional right, he could pursue his claim under K.S.A. 60-1507. If having been advised of this right for a jury determination of his age would have caused him to reject the plea agreement, he could move to withdraw his plea under K.S.A. 22-3210(d)(2). In other words, we find it significant that there are other avenues available to pursue his claimed denial of a constitutional right which would give the district court and the State a full opportunity to address his concerns.

"Finally, *Apprendi* claims related to sentence enhancements have been widely litigated in Kansas. This would not have been a novel claim to make before the trial court. In fact, the exact claim made here by Jelinek has been ruled upon by our appellate courts multiple times. See *State v. Nunez*, 319 Kan. 351, 356, 554 P.3d 656 (2024) (finding that an *Apprendi* violation could be deemed harmless if the omitted element was uncontested and supported by overwhelming evidence); *State v. Sanders*, 65 Kan. App. 2d 236, 253, 563 P.3d 234 (2025) (citing *Nunez*, held that *Apprendi* error harmless when evidence of defendant's age is presented and undisputed); [*State v.* ]*Conkling*, 63 Kan. App. 2d [841,] 844[, 540 P.3d 414 (2023)] (finding no *Apprendi* violation when defendant admitted age in signed plea agreement and financial affidavit, and listing several unpublished cases that have rejected defendant's argument); *State v. Duckworth*, No. 126,677, 2024 WL 4579265, at *5-6 (Kan. App. 2024) (unpublished opinion) (Assuming *Apprendi* error occurred, it was harmless when defendant did not contest his age, it was easily provable, and he does not contend that his defense was related to his age.). Simply allowing any party to raise new issues on appeal with no explanation for their failure to do so before the trial court or their failure to establish the lack of any other available remedy will allow the exceptions to overcome the rule. If exceptions are

routinely invoked, the rule becomes meaningless and its goals elusive." *Jelinek*, 66 Kan. App. 2d at 163-64.

I find this reasoning to be persuasive and would adopt it in this case.

By addressing Pelham's unpreserved *Apprendi* issue on appeal, we are allowing him to sidestep the district court's opportunity to address and resolve this issue. It is difficult for me to envision how excusing a 43-year-old sex offender's failure to preserve this issue serves the ends of justice. Thus, I would exercise our discretion to decline review of Pelham's unpreserved *Apprendi* challenge.